# UNITED STATES *v.* MOSLEY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 180. Submitted October 17, 1913.—Decided June 21, 1915.

Section 19 of the Criminal Code, § 5508 Rev. Stat., punishing conspiracy to injure, oppress or intimidate any citizen in the full exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States is constitutional and constitutionally extends protection to the right to vote for members of Congress and to have the vote when cast counted.

While § 19 of the Criminal Code when originally enacted was § 6 of the Enforcement Act and Congress then had in mind the doings of the Ku Klux and the like against negroes, the statute dealt at the time with all Federal rights of all citizens and protected them all, and still continues so to do.

Section 19, Criminal Code, applies to the acts of two or more election officers who conspire to injure and oppress qualified voters of the district in the exercise of their right to vote for member of Congress by omitting the votes cast from the count and the return to the state election board.

THE facts, which involve the construction and application of § 5508, Rev. Stat., and § 19 of the Penal Code, are stated in the opinion.

*Mr. Solicitor General Davis* for the United States:

Congress may, by appropriate legislation, protect any right or privilege arising from, created or secured by, or dependent upon, the Constitution of the United States. *Ex parte Virginia,* 100 U. S. 339, 345; *Ex parte Yarbrough,* 110 U. S. 651, 663; *Hodges* v. *United States,* 203 U. S. 1, 24; *Logan* v. *United States,* 144 U. S. 263, 293; *Strauder* v. *West Virginia,* 100 U. S. 303, 310; *United States* v. *Reese,* 92 U. S. 214, 217.

The right of suffrage in the election of members of Congress is such a right. *Ex parte Yarbrough, supra; Felix* v. *United States,* 186 Fed. Rep. 685, 688; *Swafford* v. *Templeton,* 185 U. S. 487; *Wiley* v. *Sinkler,* 179 U. S. 58.

This right, together with others thus created or secured, is protected by § 19, Crim. Code. Cases *supra.*

Consequently, § 19, both generally and in its application to the elective franchise, is constitutional. *Motes* v. *United States,* 178 U. S. 458; *United States* v. *Waddell,* 112 U. S. 76.

The right of suffrage secured by the Constitution consists not merely of the right to cast a ballot but likewise of the right to have that ballot counted.

The right in question arises equally from the second and fourth sections of Article I of the Constitution. *Ex parte Yarbrough,* 110 U. S. 660–664.

Upon whichever section it depends, it must include the right to have the vote counted. *Ex parte Clark,* 100 U. S. 399; *Ex parte Siebold,* 100 U. S. 371; *In re Coy,* 127 U. S. 731; *United States* v. *Gale,* 109 U. S. 65.

Any conspiracy to interfere with or prevent the free exercise or enjoyment of the constitutional right of suffrage is in violation of § 19, Crim. Code.

When applied to the elective franchise, the inference is that the statute was designed to prevent any act whereby the complete exercise of that privilege might be prevented or impeded, and not merely attacks or threats directed

against the voter's person.  See *United States* v. *Morris*, 125 Fed. Rep. 322; *United States* v. *Stone*, 188 Fed. Rep. 836, 840; *United States* v. *Waddell*, 112 U. S. 80.

No brief or appearance for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an indictment under § 19 of the Criminal Code, Act of March 4, 1909, c. 321, 35 Stat. 1088, 1092.  It was demurred to and the demurrer was sustained by the District Court on the ground that the section did not apply to the acts alleged.  As the judgment on the face of it turned upon the construction of the statute the United States brought the case to this court.

The indictment contains four counts.  The first charges a conspiracy of the two defendants, who were officers and a majority of the county election board of Blaine County, Oklahoma, to injure and oppress certain legally qualified electors, citizens of the United States, being all the voters of eleven precincts in the county, in the free exercise and enjoyment of their right and privilege, under the Constitution and laws of the United States, of voting for a Member of Congress for their district. To that end, it is alleged, the defendants agreed that irrespective of the precinct returns being lawful and regular they would omit them from their count and from their returns to the state election board.  The second count charges the same conspiracy, a secret meeting of the defendants without the knowledge of the third member of their board for the purpose of carrying it out, and the overt act of making a false return, as agreed, omitting the returns from the named precincts although regular and entitled to be counted.  The third count is like the first with the addition of some details of the plan, intended to deceive the third member of their board.  The

fourth charges the same conspiracy, but states the object as being to injure and oppress the same citizens for and on account of their having exercised the right described.

The section is as follows: "If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his-having so exercised the same, or if two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, they shall be fined not more than five thousand dollars and imprisoned not more than ten years, and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the Constitution or laws of the United States." It is not open to question that this statute is constitutional, and constitutionally extends some protection at least to the right to vote for Members of Congress. *Ex parte Yarbrough,* 110 U. S. 651. *Logan* v. *United States,* 144 U. S. 263, 293. We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box.

The only matter that needs argument is that upon which the District Court expressed its view—whether properly construed the statute purports to deal with such conduct as that of the defendants, assuming that there is no lack of power if such be its intent. Manifestly the words are broad enough to cover the case, but the argument that they have a different scope is drawn from the fact that originally this section was part of the Enforcement Act of May 31, 1870, c. 114, § 6, 16 Stat. 140, 141 (later, Rev. Stat., § 5508), and that by an earlier section of the same statute, § 4 (later, Rev. Stat., § 5506), every person who by any unlawful means hindered or combined with others to hinder any citizen from voting at any election

in any State, &c., was subjected to a much milder penalty than that under § 6. It may be thought that the Act of 1870 cannot have meant to deal a second time and in a much severer way in § 6 with what it had disposed of a few sentences before. The other sections have been repealed, but § 19, it may be said, must mean what it meant in 1870 when the Enforcement Act was passed, and what it did mean will be seen more clearly from its original words.

In its original form the section began "If two or more persons shall band or conspire together, or go in disguise upon the public highway, or upon the premises of another, with intent to violate any provisions of this Act, or to injure, oppress," &c. The source of this section in the doings of the Ku Klux and the like is obvious and acts of violence obviously were in the mind of Congress. Naturally Congress put forth all its powers. But this section dealt with Federal rights and with all Federal rights, and protected them in the lump, whereas § 4, Rev. Stat., § 5506, dealt only with elections, and although it dealt with them generally and might be held to cover elections of Federal officers, it extended to all elections. It referred to conspiracies only as incident to its main purpose of punishing any obstruction to voting at any election in any State. The power was doubtful and soon was held to have been exceeded, *United States* v. *Reese,* 92 U. S. 214. See *Logan* v. *United States,* 141 U. S. 263. The subject was not one that called for the most striking exercise of such power as might exist. Any overlapping that there may have been well might have escaped attention, or if noticed have been approved, when we consider what must have been the respective emphasis in the mind of Congress when the two sections were passed.

But § 6 being devoted, as we have said, to the protection of all Federal rights from conspiracies against them, naturally did not confine itself to conspiracies contem-

plating violence, although under the influence of the conditions then existing it put that class in the front. Just as the Fourteenth Amendment, to use the happy analogy suggested by the Solicitor General, was adopted with a view to the protection of the colored race but has been found to be equally important in its application to the rights of all, § 6 had a general scope and used general words that have become the most important now that the Ku Klux have passed away. The change of emphasis is shown by the wording already transposed in Rev. Stat., § 5508, and now in § 19. The clause as to going in disguise upon the highway has dropped into a subordinate place, and even there has a somewhat anomalous sound. The section now begins with sweeping general words. Those words always were in the act, and the present form gives them a congressional interpretation. Even if that interpretation would not have been held correct in an indictment under § 6, which we are far from intimating, and if we cannot interpret the past by the present, we cannot allow the past so far to affect the present as to deprive citizens of the United States of the general protection which on its face § 19 most reasonably affords.

*Judgment reversed.*

MR. JUSTICE MCREYNOLDS did not sit in this case.

MR. JUSTICE LAMAR, dissenting.

I dissent from the judgment that state election officers are subject to indictment in Federal courts for wrongfully refusing to receive and count election returns.

In this case the indictment charges a violation of Rev. Stat., § 5508 (Penal Code, § 19) which makes it an offense to 'conspire to injure, oppress, threaten or intimidate any citizen in the free exercise and enjoyment of any right or privilege secured to him by the laws and Constitution of

the United States.' And the indictment charges that these two defendants, *'being then and there members of the County Election Board of Blaine County, Oklahoma,'* did conspire to deprive certain unnamed voters of such right and in pursuance of that conspiracy threw out the returns from several election precincts.

The section under which the indictment is brought was originally a part of the Act of 1870, appearing as § 5508 [1] in Chapter 7 of the Revised Statutes, headed "CRIMES AGAINST THE ELECTIVE FRANCHISE AND CIVIL RIGHTS OF CITIZENS." The Act and the Chapter contained many sections—ten of them (§§ 5506, 5511, 5512, 5513, 5514, 5515, 5520, 5521, 5522, 5523) related to offenses by persons or officers against the elective franchise,—to crimes by the voter and against the voter, and specifically to offenses by Registrars, Deputy Marshals, Supervisors, and "every officer of an election." Taken together it is perfectly evident that in them Congress intended to legislate comprehensively and exhaustively on the subject of 'crimes against the franchise.' Under one or the other of them, these defendants would have been subject to indictment, but for the fact that all of those 10 sections were explicitly and expressly repealed by the Act of February 8, 1894 (28 Stat. 36).

Those ten election sections having been repealed, it is now sought to indict these officers under § 5508, which

---

[1] "SEC. 5508. If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, they shall be fined not more than five thousand dollars and imprisoned not more than ten years; and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the Constitution or laws of the United States." 16 Stat. 141, § 6.

was not repealed. This is said to be justified on the ground that, in the original act, there was such an overlapping and doubling of offenses that even when those relating to election officers were repealed, a right to prosecute them for conspiracy was retained in § 5508. But this assumes that there was an overlapping when, in fact, the subject of *"crimes against the elective franchise"* and *"crimes against civil rights"* were treated as separate and distinct. The chapter heading (Rev. Stat., §§ 5506–5523) indicates the difference; and though the two subjects were dealt with in the same Act, they were nevertheless treated as distinct. The sections of the original act ran parallel to each other but were separated from each other; and when all those dealing with offenses by election officers were repealed the legislative content of those sections was not poured into § 5508.

The Act of 1870 imposing punishment upon election officers who were agents of the State, was passed in pursuance of the provisions of the Amendment which related to state action, and thus authorized Congress to provide for the punishment of state officers by Federal courts which, prior to that time, could not have been done. The Congressional will on that subject was fully and completely expressed in those parts of the statute which were afterwards repealed. Congress, having dealt so explicitly with offenses by state election officers in the ten repealed sections cannot be supposed to have referred to them indirectly in § 5508, which does not mention voters; or elections; or election officers, but deals with the deprivation of civil rights of a different nature.

As will appear by the Report of the Committee (House Report No. 18, 53rd Cong., 1st session) and debates in the House and Senate during the discussion of the repealing act of 1894, Congress took the view that as elections were held under state laws, by state officers who were subject to punishment by the State for a violation of the election.

laws, they should not be subject to indictment in the United States courts. The express and avowed intent was to repeal all statutes which gave Federal courts jurisdiction over elections and over offenses committed by election officers. And to hold that while a single election officer is now immune from prosecution, two or more can be indicted under § 5508, gives an enlarged operation to the theory that an act, not in itself criminal, may be punished if committed by more than one. Such construction also injects § 5508 into a field from which it was excluded when passed in 1870 and into which it cannot now be forced by implication. For under Penal Code (§ 339), § 5508 means now exactly what it did when it was originally enacted.

To reverse the judgment of the lower court quashing this indictment means, in effect, that Congress failed in its avowed purpose to repeal all statutes relating to crimes against the franchise. To hold that by virtue of § 5508 as a conspiracy statute all of these repealed election offenses are retained, when committed by two or more officers, will also lead to the conclusion that in 1870 Congress in the very same statute had included two sections both of which related to the same conspiracy and to the same overt act but which might be punished differently. For, if the District Attorney had indicted under § 5506 for *"combining and confederating to prevent a qualified citizen from voting,"* the two defendants might have been punished by a fine of $500 and imprisonment for 12 months; while if the indictment for the very same conduct had been based on § 5508, for *"conspiring to deprive the citizen of a right under the United States law,"* the punishment might be a fine of $5,000, imprisonment for 10 years and the loss of the right to hold office under the laws of the United States. Congress certainly never intended in the same breath to make the same act punishable under two different sections in different ways at the option of the prosecuting attorney.

Similar anomalies could be pointed out if § 5508 is to be construed as so all-embracing as to include acts by two in violation of the 10 election sections which have been repealed.

Rev. Stat., § 5508, is highly penal and is to be strictly construed. And that ordinary rule is especially applicable when a statute is sought to be enforced against election officers. For the relation between the States and the Federal Government is such that the power of the United States courts to punish state officers for wrongs committed by them as officers, should be clearly and expressly defined by Congress and not left to implication—especially so when Congress has given such an explicit expression of its intent that election officers should not be punished in the Federal courts.

The Fifteenth Amendment is self-executing in striking the word "white" from all laws granting the right of suffrage. It was not so far self-executing as to define crimes against the franchise or to impose punishments for wrongs against a voter. The amendment provided that Congress should have power to enforce its provisions by appropriate legislation. Congress did so legislate in 1870. In 1894 it expressly repealed the legislation relating to elections. Since that time no subsequent Congress has restored that legislation or anything like it to the statute books. If this be a hiatus in the law (*James* v. *Bowman*, 190 U. S. 127, 139) it cannot be supplied through the operation of a conspiracy statute (§ 5508) which did not contemplate furtive and fraudulent conduct, or a wrong to the public, or to the voters of an entire precinct, or to wrongs like those here charged. It related to conspiracies to *injure, oppress, threaten, intimidate*—to violence, oppression, injury, intimidation; to force on the premises, force on the highway. The nearest approach to a prosecution for an election offense under § 5508 is the *Yarbrough Case*, 110 U. S. 656. But he was not an election officer and

"the beating and wounding" there charged took place on the "highway" remote from the precinct. That form of intimidation and violence was in express terms dealt with in § 5508 and in none of the repealed sections.

Rev. Stat., § 5508, has been in force for 45 years. During those 45 years no prosecution has ever been instituted under it against a state election officer. That non-action but confirms the correctness of the construction that it was never intended to apply to offenses by state election officers. On the general subject see *James* v. *Bowman,* 190 U. S. 127; *Giles* v. *Teasley,* 193 U. S. 149; *Hodges* v. *United States,* 203 U. S. 1; *Green* v. *Mills,* 69 Fed. Rep. 863; *United States* v. *Harris,* 106 U. S. 629; *United States* v. *Cruikshank,* 92 U. S. 558; *Swafford* v. *Templeton,* 185 U. S. 487; *In re Coy,* 127 U. S. 731; *Wiley* v. *Sinkler,* 179 U. S. 58, 66, 67; *Karem* v. *United States,* 121 Fed. Rep. 250, 258 (2), 259; *Seeley* v. *Knox,* 2 Woods (C. C.), 368; *United States* v. *Reese,* 92 U. S. 214; *Holt* v. *Indiana,* 176 U. S. 68, 72, 73; *Wadleigh* v. *New Hall,* 136 Fed. Rep. 941; *Baldwin* v. *Franks,* 120 U. S. 690; *United States* v. *Waddell,* 112 U. S. 76.