Arnold L. Fein, J.
Petitioner, the candidate of the Liberal Party for one of two positions of Councilman-at-Large from Bronx County, seeks an order, pursuant to article 78 of the CPLR, directing respondents, the Board of Elections of the City of New York, to issue to petitioner a certificate of election to the said councilmanic office.
A. Joseph Ribnstello, the candidate of the Republican Party and of the Conservative Party, seeks leave to intervene herein as a respondent and to answer the petition. His application is granted, there being no opposition thereto.
On November 4, 1969, a general election was held in New York City. Among the offices to he filled were those of two Councilmen-at-Large from Bronx County.
*654 The names >of the candidates for these two offices appeared on the voting machines in the following order, and after an official re-canvass of the vote, the Board of Elections reported the vote as follows:
Row A Republican Party
A. Joseph Ribustello — 40,074 votes Row B Democratic Party
Aileen Ryan —169,702 votes
Row C Conservative Party
A. Joseph Ribustello — 31,272 votes Row D Liberal Party
Frank C. Arrieale —• 70,054 votes
¡Subdivision d of section 22 of the New York City Charter provides: 1 ‘ Each elector shall have the right to vote for not more than one candidate at large and the two candidates receiving the largest number of votes in each borough shall be elected.”
Aileen Ryan, the. Democratic candidate, having received the “largest number of votes” (actually a majority of 28,302 votes), was duly elected to one of the seats.
The dispute herein is concerned solely with the remaining vacancy. Since the 70,054 votes polled by the petitioner, Arrieale, exceed the 40,074 votes garnered by A. Joseph Ribustello, as the Republican candidate, and since they also exceed the 31,272 votes received by Ribustello, as the Conservative candidate, petitioner contends that as one of “ the two candidates receiving the largest number of votes,” he is entitled to the remaining seat.
Respondents contend that the intervenor-respondent Ribustello ’s combined vote on the Republican and Conservative lines, totaling 71,303 votes (1,299 votes more than petitioner), make him the candidate with the second largest vote.
The basic question is: Shall all the votes cast for a candidate for Councilman-at-Large be counted and credited to him, or shall the votes for him be separately tallied and credited as though he were two candidates ?
The issue turns on an interpretation of sections 22 and 24 of the New York City Charter. There appear to be no legal precedents, this election being only the third election for Councilmen since the adoption of the new charter.
Subdivision b of section 22 of the New York City Charter provides that ‘ ‘ two councilmen shall be electéd at large from each of the boroughs ’ ’. Subdivisions c and d of section 22 provide:
“ c. No party or independent body as defined in the election *655 law shall nominate more than one candidate for councilman to be elected at large in any borough.
1 ‘ d. Each elector shall have the right to vote for not more than one candidate at large and the two candidates receiving the largest number of votes in each borough shall be elected,”
It is beyond dispute that the express purpose of creating the office of Councilman-at-Large and providing this method of electing them was to offset the dominance of the majority party and to provide for minority representation. Petitioner contends that the minority representation intended is representation of a party or independent body. He argues that the word ‘ ‘ candidate ” means “ candidate of a party or independent body ” and does not mean “ person ”, conceding that, if it means “ person ”, respondents are correct.
He relies essentially on the legislative history to demonstrate that it was the intention of those who drafted the charter and the voters who adopted it to provide for minority representation on a party or independent body basis.
Section 2 of the Election Law provides as follows:
“ 4. The term £ party ’ means any political organization which at the last preceding election for governor polled at least fifty thousand votes for governor.
‘1 5. The term ‘ nomination ’ means the selection in .accordance with the provisions of this chapter of a candidate for an office authorized to be filled at an election at which official ballots are used. * * *
“ 11. The term ‘ independent body ’ means any organization or group of voters which, by independent certificate, nominates a candidate or candidates for office to be voted for at an election at which official ballots are used, and which is not a party as herein provided.
“ 12. The term ‘ party nomination ’ means nomination by a party.
“ 13. The term ‘ independent nomination ’ means nomination by an independent body.”
Prior to the adoption of the present charter, two commissions were created to study the need for a new charter and to make proposals with respect thereto. The Commission on Governmental Operations of the City of New York, created by chapter 368 of the Laws of 1959 (Moore Commission), issued a summary report to the Governor on January 16, 1961. In pertinent part, it proposed “ a limited voting plan ” which would “ give each voter in his borough the right to vote for one less candidate than the number of borough wide councilmen to be elected.”
*656 This was prefaced by the commission’s statement: “ The Commission has been concerned that minority views — of about forty percent of the citizenry — are represented by only four percent of the Council. Almost complete dominance of the Council by a «ingle party is not in the best public interest. Minority-party representation strengthens a legislative body and makes it more viable by encouraging debate and spotlighting public issues. For this reason, even leaders in the dominant party agree that more minority representation is desirable.” (p. 15).
Elsewhere, in its full report, the Moore Commission stated: “In popular parlance, New York is a one party town. The majority party possesses a control in the City quite out of proportion to its actual voting strength. * * * The situation in New York City is tantamount to a system of 1 party government ’. * * * In this City, the Democratic party majority is spread so evenly that very little minority representation is likely to be .secured, unless it is provided for deliberately in the method of choosing the representative body.”
On this basis, the commission recommended a system of limited voting.
The Charter Revision Commissi orí of the City of New York appointed by the Mayor of the City of New York pursuant to chapter 87 of the Laws of 1961 (the Cahill Commission) submitted a proposed charter for the City of New York, which incorporated the present section 22 of the New York City Charter. Its interim report stated (p. 3): “ The election of ;such borough wide councilmen may be by a system limiting each voter to vote for a single borough wide candidate, thus making possible the election of minority representatives.”
Its final report, dated August 4, 1961, stated: “ The proposal for minority representation through limited voting will be submitted as a separate proposition as originally announced, but it will contain a further provision that a party or independent body may nominate only one candidate for councilman at large in each borough.”
On November 7,1961, at the general election, the proposed new charter .and the proposed system of limited voting for the election of Councilman-at-Large were approved by the electorate, thus constituting section 22 of the New York City Charter a local law of the City of New York.
The various arguments in support of the charter and the limited voting proposal were couched in terms of insuring minority representation. The system of limited voting was concededly designed to offset the dominance of the Democratic *657 Party by providing for minority representation. At the hearings and in the reports, various schemes other than the one finally adopted were suggested and discussed. However, nothing in the legislative history indicated that the purpose was representation for a particular minority party or independent body or that securing party representation for one minority party or independent body was the objective. The problem was that the normal course of elections over many years had demonstrated that any system of voting for Councilman other than a proportional representation system or a limited voting system would result in a predominantly Democratic Party City Council far out of proportion to that party’s total voting strength and with little or no representation for any other party or group.
Although it was undoubtedly the expectation at the time that the Republican Party, historically the second largest party in the city, would elect 5 of the 10 Councilmen-at-Large, the possibility was noted that the Liberal Party as a major political party might succeed in electing one or more Councilmen-at-Large. The Conservative Party was not then in existence.
All of those who supported the proposal were in agreement that it was designed to offset the overwhelming and disproportionate dominance of the Democratic Party. It does not follow that it was intended that the second Councilman-at-Large in each borough would necessarily come from a particular party or that he could not have bipartisan nomination. Obviously the dynamics of the three-party system in existence at that time made bipartisan nominations unlikely.
These provisions of the charter were immediately challenged (Matter of Blaikie v. Power, 13 N Y 2d 134). It was there argued that the limited voting scheme placed a discriminatory restriction on the right of electors to nominate candidates for public office by restricting the number of candidates each party could nominate and that it unconstitutionally restricted the right of voters to cast ballots for all political offices by limiting each voter to vote for only one Councilman-at-Large, although there were two vacancies to be filled. It was contended that these provisions violated the New York State Constitution and the Federal Constitution. The Court of Appeals held that its determination in Johnson v. City of New York (274 N. Y. 411), upholding the constitutionality of the prior New York City Charter system of proportional representation, was dispositive. No provision of the State Constitution prohibited the election of the governing bodies of cities on a limited voting basis. The court said (p. 144): “ Nor is there any basis for the petitioner’s further contention that it violates the Fourteenth Amendment *658 of the Federal Constitution. In our view nothing said by Gray v. Sanders (372 U. S. 368), and certainly nothing there decided, has any bearing in the case before us.
“ The repeated efforts of New York City, extending over the last century, to provide some form of minority representation in the machinery of local government is evidence of the widespread feeling that such representation can play an important role in a democracy. Indeed, in the Johnson case, the court characterized it as £ an attempt to make representative government a reality ’.” An appeal to the Supreme Court was dismissed “for want of a .substantial federal question” (375 U. S. 439).
Nothing in that case or in the legislative history supports the view that anything more was intended than a technique to insure that the dominant political party would not elect all of the Councilmen-at-Large. Nothing in the debates or reports or in the legislation suggests that a candidate of one political party for Councilman-at-Large may not also be the candidate of another party.
Petitioner argues that the limitations in subdivisions c and d of section 22, that no more than “ one candidate” shall be nominated by a party or independent body and that no more than “ one candidate ” shall be voted for by each voter, compels the conclusion that single-party representation or single-independent-body representation was intended. This overlooks the clear language of .subdivision d, that£ ‘ the two candidates receiving the largest number of votes in each borough shall be elected.” It is beyond dispute that the intervenor, Bibustello, was .a candidate, albeit of two parties, and that as such he received the second largest number of votes.
It is immaterial that the candidate can only be voted for on a line which represents a party or independent body. If it was intended to provide for party representation this could have been done by the expedient of prohibiting a candidate for Oouncilman-at-Large from being the candidate of more than one party. If such a proposal could withstand the test of constitutionality it would accomplish the result argued for. Nothing in the legislation imposes such limitation.
If the charter commands the result argued for, the proper procedure would have been to challenge Bibustello’s Bepublican petitions or th¿ substitution of Bibustello as the candidate of the Conservative Party. To have permitted the election to be held with Bibustello as the candidate of both parties and then to exclude his votes in one of the two parties from the computation of his total vote would effectively disenfranchise those who *659 voted for bim in one of the parties. There would be a denial of “the right to have one’s vote counted”. (United States v. Mosley, 238 U. S. 383, 386.) guch legislative intent should not be implied unless spelled out beyond doubt. This is not to hold that petitioner is barred by waiver or laches, but to suggest the necessary result of petitioner’s position.
Petitioner further relies on section 24 of the charter, as amended by chapter 282 of the Laws of 1966, to provide as follows, pointing particularly to the 1966 amendment. ‘ ‘ Except as provided in subdivision e of section twenty-two, the councilmen shall be elected at the general election in the year nineteen hundred sixty-five, and every four years thereafter. The term of office of each councilman shall commence on the first day of January after his election and shall continue for four years thereafter. Any vacancy which may occur among the councilmen shall be filled by election by a majority of all the councilmen, of a person who must be of the .same political party as the councilman whose place has become vacant if such councilman was elected as the candidate of a political party and who must be a resident of the district or borough, as the case may be, from which such councilman was elected. Upon the occurrance in any borough of a vacancy in the. office of councilman-at-large for reasons other than expirations of term, the election of a cou/ncilmanat-large to fill such vacancy at a general election shall be limited, to candidates, residing in such borough, of political parties or independent bodies other than the political party or independent body of the councilman-at-large in such borough remaining m office at the time.” (Italicized matter added by L. 1966, ch. 282.)
Petitioner argues that this amendment demonstrates the intention to provide for minority party representation and not to permit counting the votes of a candidate, obtained on two lines representing different parties or different independent bodies. He refers, in support, to two documents :
(1) The letter of the Mayor of the City of New York urging the Governor to sign the bill adopting this amendment. The letter stated: “ The proposed amendment would insure the legislative intent in giving representation to other than a majority political party by insuring that a successor to a councilman at large will be of the same political party as his predecessor and of a different political party than the other remaining councilman at large.”
(2) Resolution No. 152 of the New York City Council, March 1, 1966, requesting adoption of the amendment, based upon a report which stated: “This will eliminate the possibility of having couneilmen-at-large from the same political party.”
*660 The intention of this amendment and of these arguments in its support was only to insure that the Councilman-at-Large elected to fill a vacancy for the balance of a term would be the candidate of a political party different than the Councilman-at-Large remaining in office for the balance of the same term. The amendment merely precludes the party of the surviving Councilman-at-Large from nominating a candidate to fill the vacancy in the other seat. Petitioner raises the question if Aileen Ryan, the Democratic Councilman-at-Large resigned and Joseph Ribustello remained in office, what would be the political party of the .remaining Councilman-at-Large 1 That question is not now before the court. Presumably, the .answer is the party of his registration. Nor should the determination of Ribustello’s right to the seat be made on the basis of speculation that, if he dies or resigns, there might be a question whether his successor is to be a member of the Conservative Party or of the Requblican Party. That question is also not now before the court. (See Melzer v. Isaacs, 82 N. Y. S. 2d 18, for a discussion of a similar problem under the prior proportional representation provisions of a prior charter.)
The court, however, judicially notices with respect to both questions, that in the 1965 election and in the 1969 election, many of the district Councilmen were elected as the nominees of two political parties, in at least one case as the nominee of the Democratic and Republican Parties. Charter section 24 on which petitioner relies, provides: ‘ ‘ Any vacancy which may occur among the councilmen shall be filled by election by a majority of all the councilmen, of a person who must be of the same political party as the councilman whose place has become vacant if such councilman was elected as the candidate of a political party and who must be a resident of the district or borough, as the case may be from which such councilman was elected.”
Obviously, this language poses the same problems as to district Councilmen. It has not heretofore been suggested or held, concerning such Councilmen, that their election should be determined only on the basis of the votes garnered by them on one party line.
Moreover, the total text of section 24, as amended, demonstrates that the words 1 ‘ person ’ ’ and ‘ ‘ candidate ’ ’ are used interchangeably merely because of the context and not to indicate that “ candidate ” means something different than “ person ” in sections 22 and 24 of the charter. The third sentence of section 24, which was in the original text and remains in the amended text, referable to filling vacancies, requires “ a person who must be of the same political party as tfie council *661 man whose place has become vacant”. The word “ person ” is obviously used in that sentence because the vacancy is to be filled by “ election by a majority of all the councilmen ” and not the party or independent body process of candidate selection. The intention is to restrict the choice of the Councilman to be elected to a person of the same political party as the deceased or resigned Councilman. Clearly, the word “ candidate ” would be inappropriate in the context of the method of election. However, in the last sentence, added by the 1966 amendment, the word “ candidates ” is used because the choice of the .successor, to fill a vacancy, is to be made at a general election and the requisite word is standard nomenclature for persons elected by the voters. Throughout the Election Law, referable to nominations, the word ‘ ‘ candidates ’ ’ is used. The charter text conforms to such usage. It is patent that the intention of the two sentences taken together is to insure the maintenance of minority representation and to prevent the majority party from filling a vacancy unless the Councilman whose vacancy is being filled was ,a member of that party.
In essence, the limited voting provisions of the New York City Charter were designed to insure minority representation. In this case, Mr. Bibustello was the candidate of two minorities. There is nothing in the legislative history or the charter provision itself which precludes a combination of two minorities into a larger minority for political and electoral purposes. Although perhaps not legally relevant, it may be worth noting that in many respects this is the history of political parties in the United States, and that in the same election this year the three principal candidates for Mayor were minority candidates, and Mayor Lindsay was re-elected as a minority candidate on the basis of totaling his votes on two minority lines.
Limited voting obviously in some measure subverts the one man, one vote concept, with the apparent approval of the Supreme Court. This is evidenced by its dismissal of Blaikie v. Power (375 U. S. 439) which came after Baker v. Carr (369 U. S. 186) and Gray v. Sanders (372 U. S. 368) which announced the one man, one vote doctrine. (See WMCA, Inc. v. Lomenzo, 377 U. S. 633; WMCA v. Simon, 370 U. S. 190; Reynolds v. Sims, 377 U. S. 533.) However, the further dilution which would be the consequence of .a holding for petitioner would completely negate the one man, one vote principle, which has been held applicable in the election of municipal legislative bodies (Seaman v. Fedourich, 16 N Y 2d 94).
It must be held that all the votes cast for a candidate for Councilman-at-Large, on whatever line, are required to be *662 counted and totaled pursuant to the New York City Charter and the Election Law. To hold otherwise in the face of the plain words of the charter 1 ‘ the two candidates receiving the largest number of votes in each borough shall be elected ” would amount to a denial of “ the right -to have one’s vote counted ” (United States v. Mosley, 238 U. S. 383, 386). ‘ ‘ Substance, not shibboleth, should govern.”
In the light of the foregoing, the court has neither reached nor considered the jurisdictional objections as to the nature of the proceeding raised for the first time in the intervenor’s belated memorandum.
The proceeding is dismissed and the stay contained in the order to show cause is vacated.
Eespondents are directed to issue a certificate of election to A. Joseph Eibustello as elected to the office of Councilman-at-Large from the Borough of The Bronx.