**Manuel PENA, Jr., et al., Plaintiffs,**

**v.**

**Gary NELSON et al., Defendants.**

**Paul N. MARSTON, Counterclaimant,**

**v.**

**Bruce MYERSON et al., Counter-defendants.**

**No. CIV 73-709 PHX.**

United States District Court,
D. Arizona.

Sept. 16, 1975.

Bruce E. Meyerson, James M. Rutkow-ski, Phoenix, Ariz., for plaintiffs.

Evans, Kitchel & Jenckes, P.C., Phoenix, Ariz., and Atty. Gen. Gary K. Nelson, Powers, Boutell, Fannin & Kurn, P.A., Phoenix, Ariz., for defendants Stephen C. Shadegg and F. A. I. R.

Rawlins, Ellis, Burrus & Kiewit, Phoenix, Ariz., for Larry J. Richmond.

Don P. Crampton, Phoenix, Ariz., for defendant Paul N. Marston.

Herbert B. Finn, Phoenix, Ariz., for Ariz. Civ. Liberties Foundation as amicus curiae.

## OPINION AND ORDER

MUECKE, District Judge.

On March 26, 1973, recall supporters filed 176,152 signatures on recall petitions with the Secretary of State, Wesley Bolin. Under Arizona law, a total of 102,852 of those signatures had to be valid to force a recall election. The various county recorders in Arizona indicated that 108,309 of the signatures were genuine signatures of duly registered Arizona electors. On July 27, 1973, the then Attorney General of the State of Arizona, Defendant Gary Nelson, issued the opinion which disqualified all recall petitions circulated by deputy registrars. This resulted in 26,651 otherwise valid signatures being rejected on the basis that they were obtained by deputy registrars. Therefore, fewer than the required 102,852 signatures remained, and as a result the recall election effort was effectively terminated. In light of the foregoing facts, the following opinion and order issues.

It is hereby ordered that this Court, having considered plaintiffs' motion for summary judgment dated May 23, 1975, and all subsequent memoranda relating thereto, and having heard oral argument, finds that the July 27, 1973, opinion here at issue of the then Arizona State Attorney General, Gary Nelson, was in violation of the rights of plaintiffs in that Defendant Nelson issued said opinion contrary to Arizona law, thereby causing plaintiffs to rely upon previous state recall procedures to their detriment. Thus, the July 27, 1973, Attorney General's opinion was unfounded, unprecedented, and violated due process provisions of the Constitution of the United States. *See Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1971).

It is undisputed that but for the Arizona Attorney General's opinion in question, there would have been a sufficient number of signatures to require that the recall election of the then Governor Jack Williams be held.

As plaintiffs state at page 3 of their "reply to defendant's response to plaintiffs' motion for partial summary judgment and to cross motion for summary judgment", with reference to the law in the state of Arizona relating to recalls:

"the law which has applied since 1912 for cities, counties, school districts and every other political subdivision in Arizona has been *state law*. It is absurd to argue that state law which has governed every other recall in the history of the state has no applicability when a state official is being recalled. There is clearly no basis at all for applying different standards, legal or otherwise, to a statewide recall, particulary (sic) where the source of the legal requirements for all recalls is the Arizona Constitution, statutes and Supreme Court decisions."

While defendants contend that the state cannot be bound by the laws of politically inferior subdivisions, this response misses the point since it is the state that must determine how state law is to apply and not those who are subject to state law.

Further, Defendant Nelson was put on notice by three of his staff attorneys with experience in election law that the July 27 opinion did not accurately reflect existing law, even though it be admitted that it is the sole and final responsibility of the Attorney General to issue opinions.

■ This Court further finds that the action of Defendant Nelson denied plaintiffs their constitutional rights to petition and to associate for the advancement and expression of political beliefs. The right to petition is a fundamental freedom protected by the First and Fourteenth Amendments. *De Jonge v. Oregon*, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937). *See also, Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24, (1968). Where the state infringes upon First Amendment freedoms there must be an articulable substantial and compelling state interest which outweighs the First Amendment rights of the individual subject to the infringement. *N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

There is no factual or legal justification for Defendant Nelson's opinion which had the direct effect of infringing upon the First Amendment freedoms to petition and to associate for the advancement and expression of political beliefs. None of the depositions of defendants reflected any specific knowledge that the alleged coercion was in fact taking place. Defendant Nelson, who bottomed the disputed opinion of July 27, 1973, on the possibility of coercion in his deposition stated, in response to questioning, as follows:

Q. Were any actual reports of such coercion made to you?

A. No. No, there were some comments, and I tried like the devil to find and pin them down so that I could make sure that I was at least being intellectually honest, but I can't cite you chapter and verse other than that there were claims of hearsay, double hearsaytype, you know, of people. But no one individual complained to me.

Now, I had secondhand hearsay that some people, and I couldn't find the names of the people, had come into the Secretary of State's office and asked to have their name taken off on the grounds that they thought they had to sign, but I never was able, you know, to track that down with any specificity.

Q. Do you know if those persons left their names with the Secretary of State?

A. I don't know. You would have to ask. I know there were some— there were some letters to the editor of the Arizona Republic, at least one if not two, that had that overtone or connotation, but I can't find any specific kinds of reference to it in my records, other than my own empty-headed recollection.

Q. These secondhand reports, who did they come from?

A. Oh, people at church, Lion's Club—

Q. I'm referring specifically to someone reporting to you that they knew of coercion by Deputy Registrars?

A. Right. That's where they came from. They came from—

Q. Can you name any of these people?

A. No. No, I just can't because most of this was during the fall and spring of '72 [p. 173– line 9– to p. 174, line 17.]

The deposition of Defendant Nelson is equally vague as to the legal authority for the opinion. P. 141–147 of Defendant Nelson's deposition.

The United States Supreme Court held in *Reynolds v. Sims*, 377 U.S. 533, at 554, 84 S.Ct. 1362, at 1377, 12 L.Ed.2d 506 (1964):

"Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in

cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. *It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote,* Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274, *and to have their votes counted, United States v. Mosley,* 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355. In Mosley the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection * * * as the right to put a ballot in a box.'" (Emphasis supplied)

Therefore, if any presumption is to arise, it should be one that the signatures of registered voters are presumed valid until otherwise proven, and not that a certain class of signatures are presumed invalid based upon some vague suspicion of coercion being involved in the recall process.

Thus, the Court must find that the July 27, 1973, Arizona Attorney General's opinion violated plaintiffs' First Amendment rights.

Plaintiffs contend that they were denied equal protection of the law by defendant's refusal to accept recall petitions circulated by deputy registrars. Plaintiffs submit that "a state is required to show more than just a rational basis for any statutory classification it applies with respect to voting; the state is required to show a compelling reason in order to sustain the constitutionality of any classification which it establishes. *Dunn v. Blumstein,* 405 U.S. 330, [92 S.Ct. 995, 31 L.Ed.2d 274] (1972)." In *Dunn v. Blumstein,* the Supreme Court held:

"In decision after decision, this Court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction. See, e. g., *Evans v. Cornman,* 398 U.S. 419, 421–422, 426, 90 S.Ct. 1752, 1754–1755, 1956, 26 L.Ed.2d 370 (1970); *Kramer v. Union Free School District*

*No. 15,* 395 U.S. 621, 626–628, 89 S.Ct. 1886, 1889–1890, 23 L.Ed.2d 583 (1969); *Cipriano v. City of Houma,* 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969); *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 667, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966); *Carrington v. Rash,* 380 U.S. 89, 93–94, 85 S.Ct. 775, 778, 779, 13 L.Ed.2d 675 (1965); *Reynolds v. Sims, supra* [377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506]. This 'equal right to vote,' *Evans v. Cornman, supra,* 398 U.S., at 426, 90 S.Ct., at 1756 is not absolute; the States have the power to impose voter qualifications, and to regulate access to the franchise in other ways. See, e. g., *Carrington v. Rash, supra,* 380 U.S., at 91, 85 S.Ct., at 777, *Oregon v. Mitchell,* 400 U.S. 112, 144, 91 S.Ct. 260, 274, 27 L.Ed.2d 272 (opinion of Douglas, J.), 241, 91 S.Ct. 323 (separate opinion of Brennan, White, and Marshall, JJ.), 294, 91 S.Ct. 349 (opinion of Stewart, J., concurring and dissenting, with whom Burger, C. J., and Blackmun, J., joined). But, as a general matter, 'before that right [to vote] can be restricted, the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny.'"

This Court, therefore, holds that defendants failed to demonstrate any overriding interests which would justify treating deputy registrars and those voters who signed petitions circulated by deputy registrars different than non-deputy registrars and the voters who signed petitions circulated by non-deputy registrars, and that, therefore, plaintiffs also were denied equal protection of the laws guaranteed to them by the Constitution of the United States.

■ Finally, this Court holds that the July 27, 1973, opinion violated 42 U.S.C. Sec. 1973c (1970), in that Defendant Nelson failed to secure prior clearance from the United States Attorney General's Office or by way of a declaratory judgment action before chang-

ing election law procedures. *See Allen v. Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). There is no need to convene a three judge court for the consideration by this Court on the applicability of 42 U.S.C. 1973c since this holding is declaratory in nature and has no effect on federal-state relations because no injunctive relief is sought, and because the state law relating to recall procedures has since been changed by the state legislature, and therefore this opinion will have no effect on the future operation of state election laws. In fact, this whole issue might very well be moot, were it not for the damages claimed by plaintiffs.

Therefore, this court by way of declaratory judgment grants plaintiffs' motion for summary judgment and denies Defendant Nelson's motion for summary judgment, and finds that the rights of plaintiffs were violated on each of the above mentioned grounds separately considered for the reasons stated herein and for those reasons stated in plaintiffs' motion for summary judgment. This opinion in no way decides the issue of the liability of the defendants since the Court finds that the issue of liability is inappropriate for summary judgment, there being material fact issues. Thus, the issue of defendants' civil liability and defendants' claims of official immunity" are not herein considered or decided.

█ The plaintiffs' motion for certification of the class is granted and the classes are certified as set forth in plaintiffs' motion to maintain class action, dated May 23, 1975. This Court finds, however, that the action should proceed under Rule 23(b)(3) of the Federal Rules of Civil Procedure as opposed to plaintiffs' motion for a Rule 23(b)(2) certification. Therefore, plaintiffs shall submit a proposed form of notice pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure within twenty days after this order issues, and the defendants shall have ten days thereafter to object to the proposed form of notice.