Eugene J. McCARTHY et al.

v.

Philip NOEL, Governor of the State of Rhode Island, et al.

Civ. A. No. 76–0402.

United States District Court,
D. Rhode Island.

Sept. 24, 1976.

Amato A. DeLuca, American Civil Liberties Union, Warwick, R. I., for plaintiffs.

William Brody, Asst. Atty. Gen., Providence, R. I., for defendants.

## OPINION and ORDER

PETTINE, Chief Judge.

In this action, as in others recently brought in various federal courts around the country,[1] Eugene McCarthy and four of his supporters and potential presidential electors challenge a state statute which, on its face and as applied, prevents the placement of his name on the November ballot as a candidate for President of the United States.

McCarthy is an announced, independent candidate for President of the United States. Each of the four other plaintiffs is a citizen of the United States and Rhode Island, qualified and registered to vote, who (1) is qualified and desires to appear on the November 1976 ballot as a Presidential elector for McCarthy, and (2) desires to vote for McCarthy in November 1976.

Defendants are the Governor of Rhode Island, Philip Noel and the Secretary of State, Robert F. Burns. The Secretary of State is charged with administering the relevant section of the State election law.

Title 17, Chapter 16, Section 12 of the Rhode Island General Laws (1969 ed. as amended), provides:

"All final nominations required to be returned to the Secretary of State for printing on the State ballot labels for a general state election, other than nominations pursuant to Chapter 15 of this Title, shall be filed with the Secretary of State

---

1. *See, e. g., McCarthy v. Kirkpatrick,* 420 F.Supp. 366 (W.D.Mo., filed Sept. 24, 1976); *McCarthy v. Asplen,* Civ. No. 76–941 N (D.Md., 1976); *McCarthy v. Askew,* 420 F.Supp. 775 (S.D.Fla., filed Sept. 15, 1976); *McCarthy v. Lunding,* No. C–2733 (N.D.Ill., 1976).

or with someone in his office delegated to receive the same, not later than 5 p. m. of the 30th day preceding the day for holding of the primary election held pursuant to the provisions of Chapter 15 of this Title."

Under this section and section 17–16–8(a), supporters of McCarthy were required to submit the signatures of at least 1,000 voters, each county of the state being represented by at least 25 voters, by August 12.[2] Plaintiffs had collected and filed only 519 signatures by August 12, 1976, of which 382 were validated by the Secretary of State. Thereafter, plaintiffs continued to collect signatures, and by August 22, 1976 had collected an additional 1210 notarized signatures. They attempted to file 885 of these signatures with the local Boards of Canvassers. Seven hundred and forty four of these were accepted, but not verified, and forwarded to the Secretary of State. Another 141 were tendered and not accepted. Plaintiffs had, but failed to tender, an additional 325 signatures because local boards had refused to verify and in some cases even accept them.[3]

Many of the Boards refused to accept these signatures because of plaintiffs' failure to meet the August 12, 1976 filing date. This action was filed on September 21, 1976.

McCarthy and his supporters claim that the statutory deadline itself, and its enforcement by defendants, have deprived them of their associational rights and right of franchise guaranteed by the First and Fourteenth Amendments and have invidiously discriminated against plaintiffs and others of "independent presidential political persuasion," denying them the equal protection of the laws.

Jurisdiction is properly premised on 28 U.S.C. § 1343 and 42 U.S.C. § 1983, and on 28 U.S.C. § 2201. Plaintiffs seek a declaration that the laws of Rhode Island, and the actions of defendants in enforcing them, are constitutionally defective to the extent that they bar McCarthy's name from appearing on the November ballot. They also seek an injunction directing defendants Noel and Burns to place the McCarthy electors on the 1976 ballot.

Pursuant to agreement of the parties, the hearing on the motion for preliminary injunction was consolidated with trial on the merits. The matter is therefore before the Court on application for final injunctive relief.

### The Merits

Plaintiffs make two distinct, but related, constitutional attacks on Rhode Island's enforcement of its August 12 petition filing deadline. First, they say that to require an independent candidate to decide to run and to complete the necessary formalities (admittedly valid) by August 12 interferes with their rights of association and franchise. Secondly, they say that in requiring independent presidential candidates to file by August 12, Rhode Island denies them the equal protection of the laws guaranteed by the Fourteenth Amendment. They point out that, on August 12, the major parties had not completed their nominating conventions, the state primary was still a month away, and the naming of state presidential electors was not yet accomplished. This last event will occur this year on October 14, when the major parties hold their state nominating conventions for presidential electors. Because all of these steps must be completed before the November ballots can be actually prepared, plaintiffs argue that the August 12 filing deadline for independent candidates is arbitrary and invidiously discriminatory.

■ We begin with the rights at stake. As the Supreme Court has often stated, "It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex parte Yarbrough,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274, and to have their votes counted, *United States v. Mosley,* 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355 . . . . *The*

---

**2.** R.I.G.L. § 17–16–8. No challenge is raised here to the number of signatures required.

**3.** R.I.G.L. § 17–16–19 (1969 ed. as amended 1976).

right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."

Reynolds v. Sims, 377 U.S. 533, 554–555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964) (emphasis added.)

Decisions of the Court make clear beyond doubt that the right to vote for the candidate of one's choice includes the right to vote for minor party candidates, Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), and independent candidates, Storer v. Brown, 415 U.S. 724, 745–46, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). As the Court said in Williams v. Rhodes, supra,

"The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot."

393 U.S. at 31, 89 S.Ct. at 11.

After Storer v. Brown, supra, it is clear that this language from Williams applies to independent candidates kept off the ballot.[4]

■ The Court has recently summarized the analysis to be applied when ballot access is restricted by petition requirements, filing deadlines, and similar limitations:

"[T]he principle has been developed that restrictions on access to the electoral process must survive exacting scrutiny. The restriction can be sustained only if it furthers a 'vital' governmental interest, American Party of Texas v. White, 415 U.S. 767, 780–81, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), that is 'achieved by a

means that does not unfairly or unnecessarily burden either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity.' Lubin v. Panish, 415 U.S. 709, 716, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). See American Party of Texas v. White, supra, 415 U.S. at 780, 94 S.Ct. 1296; Storer v. Brown, 415 U.S. 724, 729–730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). These cases . . . dealt primarily with state laws requiring a candidate to satisfy certain requirements in order to have his name appear on the ballot. These were, of course, direct burdens not only on the candidates' ability to run for office but also on the voters' ability to voice preferences . . .." Buckley v. Valeo, 424 U.S. 1, 94, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976)[5] (emphasis added).

■ There are a number of vital interests which states may seek to further in regulating elections. The Supreme Court has recognized "that the State's interest in keeping its ballots within manageably understandable limits is of the highest order." Bullock v. Carter, 405 U.S. 134, 144–145, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). The state has a related interest in protecting the integrity of the political process from frivolous and fraudulent candidacies. Jenness v. Fortson, 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Finally, the state has an interest in the stability of the political system. Storer v. Brown, supra, 415 U.S. at 736, 94 S.Ct. 1274. Measuring Rhode Island's August 12 deadline in light of these vital interests, the Court must keep in mind two instructions from the controlling cases. The state must seek to achieve its vital goals by means that do not unfairly or

---

4. Cf. Buckley v. Valeo, 424 U.S. 1, 87 n. 118, 89 n. 122, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

5. There is dicta in Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) to the effect that barriers to candidate access do not ipso facto compel close scrutiny, although in Bullock (indeed, in every ballot access case, since Williams v. Rhodes, supra) the court did use a strict scrutiny standard of review. Examining the Rhode Island statute at issue in

Bullock's "realistic light," the Court finds that this exclusionary mechanism "has a real and appreciable impact on the exercise of the franchise," whose impact is based on the impermissible criteria of nonadherence to the two major parties. Williams v. Rhodes, supra; Storer v. Brown, supra. The Court is satisfied, therefore, that the standard of close review described in the quotation from Buckley v. Valeo, supra, is appropriate here.

unnecessarily burden a candidate's (or his supporter's) associational and voting rights. *Lubin v. Panish, supra.* But "the Constitution does not require the State to choose ineffectual means to achieve its aims." *Storer v. Brown, supra,* 415 U.S. at 736, 94 S.Ct. at 1282.

By these standards, the early filing deadline which has so far kept Eugene McCarthy off the Rhode Island ballot is extraordinarily ill-fitted to further the state's interest in an understandable ballot of manageable size, which is ordinarily furthered by weeding out frivolous candidates. *See Lubin v. Panish, supra.* The early deadline arbitrarily cuts off some candidacies in the same crude, over-inclusive manner that high filing fees did in *Lubin v. Panish, supra.* It suffers the same defect: it does not work. Whatever spurious and frivolous candidates the Rhode Island scheme has weeded out, it has also put an end to a serious, legitimate candidacy.[6] *See Lubin v. Panish, supra,* 415 U.S. at 715–717, 94 S.Ct. 1315. Early filing is unreliable as a test of the genuineness of a candidacy. Indeed, the most committed independent candidate is often the independent who, dissatisfied with what the major party conventions offer, runs as a third-party or independent candidate.[7]

The Court cannot find that the early deadline furthers the interest in the stability of the political system, without placing an unnecessary and unfair burden on independents. Rhode Island's interest in preventing rejected claimants for major party presidential nomination from running as independent candidates is fully satisfied by the requirement, met here, that *all* independent candidates for president declare their candidacies by June 10. R.I.G.L. Sec. 17–16–1; *cf. Storer v. Brown, supra.*

Nor can the state argue that the stability of the political system is enhanced by the early deadline's tendency to provide voters sufficient time to familiarize themselves with a manageable group of candidates at an early date. The state primary is not held until September 14, four weeks *after* plaintiffs had completed their signature gathering. And as happened this year, major parties do not always nominate their candidates before the Rhode Island deadline.

■ Thus, the early deadline is unfair to plaintiffs in these circumstances, and an unnecessary burden on their rights. The goals of the stability and integrity of the political process can effectively be served by a filing deadline later than August 22 (the date on which the plaintiffs had tendered sufficient signatures to qualify). These goals would be better served and less burdensome to independents by a deadline related to the analogous events of state primaries, major party nominations, and elector-designations. Certainly Rhode Island must further its interests by *some* deadline, and the constitutional requirements are not so rigid as to strike down any deadline which is not set for the last possible day. In holding that the State's deadline, on its face and as enforced, represents an unfair and unnecessary burden on plaintiffs' rights, the Court places particular emphasis on the fact that Rhode Island cannot finalize its ballot until after the party primary; there is thus simply no meaningful justification under the cases for requiring independents to qualify a month earlier than that.[8] Moreover, the state failed to proffer any justification whatever for requiring independent presidential candidates to complete signature requirements two

---

6. The Yankelovich-*Time* poll of September 6, 1976, indicates that McCarthy would have received at least 12% of the popular vote if the presidential election had been held between August 20 and August 24, 1976. McCarthy received more than three million popular votes when he challenged President Lyndon B. Johnson and Vice-President Hubert H. Humphrey, for the Democratic nomination in 1968.

7. *Cf.* Theodore Roosevelt in 1912; the States' Rights Party's walkout of the Democratic Party in 1948.

8. The August 12 deadline is apparently earlier than the deadline of at least 26 other states. Affidavit of Eugene McCarthy, September 5, 1976.

months before the major parties nominate their electors.

In the factual context presented in this case the Court declares § 17–16–12 R.I.G.L. *as it pertains to presidential candidates* to be unconstitutional.

## Equitable Relief

█ The Court must now consider the traditional factors which guide its discretion in the granting or withholding of equitable relief.

The irreparable injury faced by plaintiffs here if the injunction were not to issue is obvious: McCarthy would not appear on the ballot. His supporters could not vote for the candidate of their choice. Thus, their right of association and the franchise would be irremediably damaged.

The harm to defendants should the injunction be granted, while clearly of a lesser order, must still be considered by the Court. As the Supreme Court described an analogous problem in the reapportionment context:

"it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles."

*Reynolds v. Sims,* 377 U.S. at 585, 84 S.Ct. at 1394.

A similar situation obtained in *Williams v. Rhodes, supra.* There, the Socialist Labor Party and the American Independent Party filed separate challenges to Ohio's restrictive election laws on July 2, 1968, and July 29, respectively.[9] The cases were decided by a three-judge court on August 29 after hearings on August 12 and August 19. The court agreed with the merits of both plaintiffs' positions, but over strong dissent declined to place either party on the ballot. Relief was limited to an order to make write-in materials available because plaintiffs were found guilty of "laches" for failing to seek prompt relief. *See Socialist Labor Party v. Rhodes,* 290 F.Supp. 983, 998 (S.D.Ohio 1968) (Kinneary, J., concurring and dissenting).

In early September, the American Independent Party appealed to Mr. Justice Stewart, Circuit Justice for the Sixth Circuit, for an injunction placing the party on the ballot. He granted it after consulting with other members of the Court, on September 10, 1968 "in the interests of the efficient operation of the electoral machinery." *Williams v. Rhodes, supra,* 393 U.S. at 27, 89 S.Ct. at 9. On September 13, the Socialist Labor Party requested similar relief, which Justice Stewart denied, relying on:

"the late date on which this motion was presented, the action already taken by the Ohio authorities, the relief already granted appellants by the district court, and the fact that the basic issues they present will be fully canvassed in the argument of the appeal in *Williams v. Rhodes* . . . ."

393 U.S. at 64 n. 2, 89 S.Ct. at 28.

Thus, as explained by Justice Black in the majority opinion, "the motion was denied principally because of the Socialist Party's failure to move quickly to obtain relief, with the consequent confusion that would be caused by requiring Ohio *once again to begin completely reprinting its election ballots.*" 393 U.S. at 28, 89 S.Ct. at 9 (emphasis added).

---

**9.** *See Socialist Labor Party v. Rhodes,* 290 F.Supp. 983, 985 (S.D.Ohio 1968), *aff'd* as modified sub nom., *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

After careful consideration, the Court is of the opinion that the position of plaintiffs here is closer to that of the American Independent Party which was granted emergency placement, that it is to the party denied such placement. McCarthy and his supporters proffered their petitions only ten days past the August 12 deadline, a deadline we have found unreasonable. The state here will not have to reprint its ballots twice as was the case for Ohio in *Williams v. Rhodes, supra.* The task for Rhode Island is simple. Since the voting machines have a separate column for assorted independent candidates, it need only place plaintiff McCarthy (should he qualify) in a currently available slot in said column.[10] Given the September 14 primary date, and a race for United States Senator only decided on September 22, 1976, the inconvenience caused to defendants by ordering them on this date, September 24, to accept for validation McCarthy's nomination petitions with the voter signatures thereon is far outweighed by the loss of plaintiffs' rights detailed above. The defendants admitted the process of validating signatures would present no problem, indeed, that it might not take more than a day or so. Insofar as the public interest is a factor in framing relief, the Court is of the opinion that it lies heavily on the side of the plaintiffs. There is no evidence that the placement of McCarthy's name on the ballot at this date would confuse voters, and much evidence, if we are to accept the Yankelovich-*Time* Poll (see n. 6, *supra*), that it would conform to the desires of a great part of the public, still undecided on a presidential choice. Of course, Rhode Island need not, as did other States, have agreed to place McCarthy's name on the ballot in disregard of the deadline without its day in court.[11] Having decided to litigate, the state should not now be surprised if it finds it cannot achieve as a matter of equitable discretion what it has failed to win on the merits.

It is therefore Ordered that defendants proceed to accept and certify the nomination papers according to law, and, if McCarthy so qualifies, place McCarthy's electors on the November 1976 general ballot in Rhode Island.

So ordered.

10. The state argues that placing McCarthy's name in the open presidential slot in the column for assorted independent candidates would be unfair to the other independent candidates running for state and local offices, in that it would associate them in the voters' minds with his views. The Court finds this argument meritless. As is clear from testimony offered by the state, the column is not for an Independent Party, with a single emblem and slogan: it is for candidates who choose not to associate themselves in a party at all. As the state admits, there are already at least two candidates running for different state offices as independents. They are not running together, and insofar as the Court can determine, their political philosophies are not compatible. Placing McCarthy's name in the independent column seems particularly reasonable in light of the fact that there are no more available columns on the voting machine. Of ten columns on the machine, two columns each are allotted to the Democratic and Republican parties; one each to four other minor parties which have qualified candidates; one column is reserved for referenda; and one for assorted independent candidates.

Defendants are, of course, free to adopt whatever method they choose within constitutional limits to place McCarthy's name before the voters. The easy availability of the independent column, however, is sufficient to satisfy the Court that the granting of equitable relief at this late date would not be unduly burdensome to the state. *See Williams v. Rhodes,* 393 U.S. 23, 28, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *cf. Reynolds v. Sims,* 377 U.S. 533, 585, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

11. Among those states which have apparently recognized the impermissibility of the restrictions are Illinois and Maryland.