707 F.2d 59
 UNITY PARTY; Roosevelt Rhodes; Zachary Rogow; Susan
Radash; Waverly Howard; Ronald R. Winley; Bruce
Bernstein; Hakim Sabir; Casey Scott
Roberts; and Erica Karan,
Plaintiffs-Appellants,
v.
Thomas W. WALLACE; George D. Salerno; R. Wells Stout;
Donald Rettaliata; William H. McKeon; New York State Board
of Elections; Martin Richards; Betty Dolen; and Robert V.
Kelly, Defendants-Appellees.
 No. 770, Docket 82-7804.
 United States Court of Appeals,
Second Circuit.
 Submitted Jan. 11, 1983.
Decided May 10, 1983.
 
 Arthur N. Eisenberg, New York City (New York Civil Liberties Union, Craig Kaplan, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, National Emergency Civil Liberties Committee, New York City, of counsel), for plaintiffs-appellants.
 Thomas P. Zolezzi, Albany, N.Y., for defendants-appellees.
 Before MOORE,* CARDAMONE and PIERCE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 We are asked to decide the constitutionality of section 6-146(1) of the New York Election Law. This statute provides that a person nominated for public office by an independent body "shall, in a certificate signed and acknowledged by him, and filed as provided in this article, accept the nomination as a candidate of ... such ... independent body ... otherwise [the nomination] shall be null and void." N.Y. Elec.Law Sec. 6-146(1) (McKinney 1978) (emphasis supplied). At issue is whether the State, pursuant to this statute, may constitutionally deny a nominee for office a place on the ballot for his failure to file timely an acknowledged acceptance. We conclude that it may.
 
 I.
 
 2
 On September 7, 1982, the Unity Party filed a nominating petition with the New York State Board of Elections (Board) containing sufficient signatures to qualify Roosevelt Rhodes as its candidate for the United States Senate. That same day Thomas W. Wallace, the Board's Executive Director, sent a letter to Rhodes informing him that the Board had received the Unity Party's nominating petition, and that "[p]ursuant to Section 6-158 of the Election Law ... the last date to accept or decline said nomination by duly acknowledged document is September 10, 1982" (emphasis added). By letter dated and postmarked September 9 Rhodes advised the Board that he was accepting the nomination. On September 20 Wallace wrote Rhodes to inform him that his nomination was invalid due to his failure to comply with the acknowledgment requirement set forth in Sec. 6-146(1).
 
 
 3
 Rhodes immediately tried to correct the error by resubmitting a copy of his earlier letter to which he appended an attempted acknowledgment. Regardless of whether this belated acknowledgment was proper in form, it was of no effect since under New York law failure to file a timely acceptance "shall be a fatal defect," N.Y.Elec.Law Sec. 1-106(2) (McKinney 1978). On September 21, Rhodes petitioned Special Term, New York State Supreme Court, Albany County, to exercise its discretion under state law to permit him to file an acknowledged acceptance nunc pro tunc. In a memorandum dated September 27, 1982 Special Term dismissed Rhodes' petition. The Appellate Division, Third Department, affirmed the dismissal on October 12 and at the same time refused to rule on a newly presented federal constitutional argument because it had not been raised below. On October 15 the New York State Court of Appeals affirmed the order of the Appellate Division for the reasons stated in the Appellate Division memorandum.
 
 
 4
 On October 21 Rhodes, the Unity Party and certain individual supporters of Rhodes' candidacy commenced the instant action in the United States District Court for the Eastern District of New York. Appellants' complaint sought a declaration that Sec. 6-146(1) is unconstitutional and an injunction ordering Rhodes' name placed on the ballot. Accompanying it was appellants' motion for summary judgment. Since the facts were not in dispute and the date of the election was rapidly approaching, Judge McLaughlin promptly entertained the motion and, following oral argument on October 22, denied appellants' motion and granted summary judgment to defendants. Late in the afternoon on October 26 appellants' counsel sought an expedited appeal. The next day, after entertaining the appeal and hearing oral argument, we issued an order affirming Judge McLaughlin's denial of injunctive relief. With only six days remaining until the 1982 general election and with 14,000 voting machines about to be distributed throughout the State, the equities did not warrant granting appellants' belated application for a federal injunction.
 
 
 5
 Having disposed of the prayer for injunctive relief, we reserved decision on the issue of whether the district court erred in ruling that Sec. 6-146(1) is not unconstitutional. We have now had the opportunity to consider fully the constitutional issue.
 
 II.
 
 6
 Appellants advance along two avenues of constitutional attack on New York's statute. First, the individual appellants argue that Sec. 6-146(1) impermissibly burdens their First and Fourteenth Amendment rights both of political association and voting, and Rhodes' right of access to the ballot. Second, appellants argue that in violation of the Equal Protection Clause the statute improperly discriminates against small political parties, candidates of those parties and those who support their candidates.
 
 
 7
 An analysis of statutory language alone will not reveal the true dimension of a claimed denial of any of these rights. We must also examine the nature, extent and likely effect of the law on the interests of those claiming to be fenced out by it. See Anderson v. Celebrezze, --- U.S. ----, 103 S.Ct. 1564, 75 L.Ed.2d ---- (1983); Storer v. Brown, 415 U.S. 724, 738, 94 S.Ct. 1274, 1283, 39 L.Ed.2d 714 (1974); Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). Only then can it be determined whether there exists a significant burden on fundamental rights or on a protected class such that heightened scrutiny is mandated. When the full scope of the obstacle to the exercise of these rights and the burden on the class is revealed, then the inquiry turns to the State's interests that purport to justify it.
 
 
 8
 We first consider the nature and extent of New York's statutory scheme. Under its Election Law the State Legislature erected a framework to regulate elections and detailed it throughout with specific particulars. Under the Election Law a "party" is defined as a political organization which polled at least 50,000 votes for its gubernatorial candidate in the last preceding election. N.Y.Elec.Law Sec. 1-104(3) (McKinney 1978). An "independent body" is a nominating group or organization which is not a "party" under section 1-104(3). Id. Sec. 1-104(12) (McKinney 1978). Article 6 of the Election Law establishes procedures for access to the ballot that vary according to the nature of the nominating group or organization and the office to be filled. See id. Secs. 6-100 to 168. (McKinney 1978 & Supp.1983). "Party" senatorial candidates are ordinarily nominated through the primary election process, see id. Sec. 6-110 (McKinney 1978), while independent nominations are made by petition, id. Sec. 6-138(1) (McKinney 1978). Simply obtaining the requisite signatures does not assure one a place on New York's ballot. Objections may be filed against the petition and, if allowed, may result in its being declared invalid. See id. Sec. 6-154 (McKinney 1978). And, as illustrated by this case, Sec. 6-146(1) which is essentially a technical, administrative provision contains a requirement that must also be met before a would-be independent body candidate's name will be placed on the ballot.
 
 
 9
 We next consider the likely effect of New York's restriction in light of appellants' contentions that it significantly burdened their fundamental rights to politically associate and to vote for the candidate of their choice for the Senate. What the Constitution condemns are restrictions that, without compelling justification, significantly encroach upon the rights to vote and to associate for political purposes. See, e.g., Storer, 415 U.S. at 729, 94 S.Ct. at 1278; Kusper v. Pontikes, 414 U.S. 51, 58, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973). No weighty burden was placed on appellants' rights by Sec. 6-146(1). Appellants were not totally excluded from voting or prevented from associating with the political group of their choice. The State provided an alternative by which the individual appellants could have exercised their rights to vote and politically associate. Under the provisions of New York Election Law Sec. 8-308 (McKinney 1978) they could have cast a write-in ballot for candidate Rhodes. Concededly, this is not the same as being on the ballot. See Anderson v. Celebrezze, --- U.S. at ----, n. 26, 103 S.Ct. at 1575, n. 26. Nonetheless, we conclude that any encumbrance on appellants' rights to vote and politically associate is at best de minimus and New York may justify the restriction by advancing a rational basis for it.
 
 
 10
 We turn now to consider the effect of Sec. 6-146(1) on Rhodes' candidacy. Nothing before us indicates that compliance with the acknowledged acceptance requirement is difficult. There is no evidence in the record that compliance is time-consuming, complex or imposes any financial hardship. In fact, in the year 1982, of the 148 candidates required to file timely acknowledged acceptances Rhodes was the only one who failed so to file. Of some significance is the fact that the Unity Party candidates for the offices of Governor and Lieutenant Governor of New York were able to meet the acknowledgment requirement and their names were on the ballot in the 1982 general election. Only the "careless or inadvertent failure to follow the mandate of the statute," Matter of Hutson v. Bass, 54 N.Y.2d 772, 774, 443 N.Y.S.2d 57, 426 N.E.2d 749 (1981), is what gives rise to Rhodes' complaint before us. Thus, we conclude that New York did not erect some sort of ponderous portcullis barring access to the ballot that triggers heightened scrutiny to justify it. Instead, the restriction is no more than a flimsy wicket kind of bar--an insignificant hurdle.
 
 III.
 
 11
 Appellants further contend that there is a likelihood that New York's statute significantly cumbered the class of which they are members. In our analysis we look first to the Constitution. The Fourteenth Amendment declares that "No State shall ... deny to any person ... the equal protection of the laws." Of course, not all minor variations in the application of a state's laws to different groups violate the Fourteenth Amendment's command. See Williams, 393 U.S. at 30, 89 S.Ct. at 10. No compass points the way for us to separate a valid restriction from an invidious one, see Storer, 415 U.S. at 730, 94 S.Ct. at 1279 (1974), save that a restriction should be examined realistically, see Bullock v. Carter, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972).
 
 
 12
 The impact of Sec. 6-146(1) concededly falls somewhat more heavily upon independent and minor party candidates than on major party candidates. This difference arises from the statutory distinction between a "party" and an "independent body" previously noted. At the same time, however, the acknowledged acceptance requirement also has application to candidates other than those nominated by independent bodies. For example, persons nominated by parties of which they are not members as well as those nominated by more than one party must also fulfill this same requirement for their names to appear as such party's candidates.
 
 
 13
 Moreover, the statutory requirement here bears no resemblance to those burdens that have been found to violate the Equal Protection Clause. State election laws that create classifications heavily weighing down independent candidates or small political parties call for strict scrutiny. See, e.g., Clements v. Fashing, --- U.S. ----, ----, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982); Illinois Elections Board v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); see also Williams, 393 U.S. at 35, 89 S.Ct. at 12 (Douglas, J. concurring) (enactment of "an entangling web" of laws foreclosing the ballot to all except the two major parties, violates the Equal Protection Clause). Nor does the challenged statute employ a scheme based on classifications such as race or economic status, which are suspect. See, e.g., Lubin v. Panish, 415 U.S. 708, 717-18, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974); Bullock, 405 U.S. at 144, 92 S.Ct. at 856; McDonald v. Board of Election Commissioners, 394 U.S. 802, 807, 89 S.Ct. 1404, 1407, 22 L.Ed.2d 739 (1969).
 
 
 14
 Thus, we conclude that by enacting Sec. 6-146(1) New York did not hang a millstone around the necks of small or minor political parties to sink them in discriminate fashion, violative of their Fourteenth Amendment rights.
 
 IV.
 
 15
 When the nature and extent of the statute and its effect on the interests of those claiming to be impacted by it are looked at realistically, neither of the two constitutional avenues of argument raised by appellants mandates heightened scrutiny. The challenged restriction is subject only to a rational basis analysis.
 
 
 16
 That rational basis is found in New York's legitimate, even compelling, interest in protecting the integrity and efficiency of its electoral process, see Clements, --- U.S. at ----, 102 S.Ct. at 2843; American Party of Texas v. White, 415 U.S. 767, 782 n. 14, 94 S.Ct. 1296, 1307 n. 14, 39 L.Ed.2d 744 (1974). The requirement that an acceptance be acknowledged reflects the legislative purpose of preventing election fraud. Nominees from major political parties ordinarily are designated at conventions held by parties' state committees, see N.Y.Elec.Law Sec. 6-104 (McKinney 1978), and/or in party primaries, see N.Y.Elec.Law Sec. 6-110. Upon achieving victories at either conventions or in primaries major party candidates have already publicly accepted their parties' nominations. There is no need to guard against fraudulent acceptances or declinations after the thorough public screening to which such candidates are subjected.
 
 
 17
 The same cannot be said for independent body candidates whose acceptances by letter following nominations by petition are not subject to the same public scrutiny as the acceptance of major party candidates. Absent an acknowledged acceptance requirement, the State's ballots could be unnecessarily crowded and confused with the names of independent nominees who had no desire to run for public office. Preventing ballot overcrowding and voter confusion is a legitimate interest of New York. See Clement, --- U.S. at ----, 102 S.Ct. at 2843. The statute's difference in treatment thus arises rationally from a difference in the electoral process and constitutes no denial of equal protection.
 
 
 18
 No doubt New York could have protected the integrity of its ballot through less drastic means than automatically excluding those who fail to acknowledge their acceptance. But all that is required is that the path chosen by the legislature bear a rational relationship to the State's purpose. The path chosen here by the State Legislature--requiring an acknowledgment of a candidate's acceptance for office--is a rational one and plainly well-suited to the State's legitimate purpose. Appellants' attack on New York Election Law Sec. 6-146(1) as a denial of equal protection and as an unconstitutional burden on rights arising under the First and Fourteenth Amendments must therefore fail.
 
 
 19
 The order is affirmed.
 
 
 
 *
 Due to the death of Judge Leonard P. Moore, this case has been decided by the two remaining members of the panel pursuant to Sec. 0.14(b) of the Rules of the United States Court of Appeals for the Second Circuit