863 F.2d 1368
 57 USLW 2382
 Jay MANIFOLD, Judy Roberts, Tom Hanna, Michael D. Lewis, Roy
G. Lieberman, Marshall E. Cobb, James Carter, John
Gieringer, Theresa Worley, Greta S. Buzzard, Peter M. Kerr,
Carol Jean Tucker, Thomas Martin Edelman, Franklin M.
Nugent, Mike Hurley, Gerald Geier, Michael J. D'Hooge, Mike
Roberts a/k/a Warren A. Roberts, III, and The Libertarian
Party of Missouri, Appellants,
v.
Roy D. BLUNT, Secretary of State for the State of Missouri, Appellees.
 No. 88-2394.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 19, 1988.
Decided Dec. 14, 1988.
 
 James C. Linger, Tulsa, Okl. & Mark W. Comley, Jefferson City, Mo., for appellants.
 Deborah L. Ground, Asst. Atty. Gen., Jefferson City, Mo. & William Newcombe, Jefferson City, Mo., for appellees.
 Before HEANEY, BOWMAN and MAGILL, Circuit Judges.
 MAGILL, Circuit Judge.
 
 I. INTRODUCTION
 
 1
 This case involves an equal protection challenge to Missouri's "new party" ballot access statute. The Libertarian Party of Missouri and several of its members (Libertarians) challenged the constitutionality of Missouri's statutory requirement that new political parties certify their presidential electors earlier than established parties. The district court[1] denied the Libertarians' motion for an injunction requiring the Secretary of the State of Missouri to place the Libertarian Party candidates for President and Vice-President of the United States on Missouri's 1988 general election ballot. This expedited appeal followed. On September 22, 1988, 860 F.2d 1086, this panel issued a final order affirming the order of the district court, Judge Heaney dissenting, with opinion and dissent to follow. We issued mandate at that time. We now reaffirm the order of the district court.
 
 II. BACKGROUND
 
 2
 The Libertarian Party initiated this action after the Libertarians' candidates for President and Vice-President were declared ineligible to appear on Missouri's general election ballot. On August 1, 1988, the Libertarian Party of Missouri presented Missouri's Secretary of State with a recognition petition containing sufficient signatures to qualify the Libertarians as a new political party under Missouri law.[2] The Libertarians did not present their final list of presidential electors or declarations of their candidacy until September 7, 1988.[3] On September 8, 1988, the Secretary of State informed the Libertarian Party that its candidates for president and vice-president would not appear on the Missouri ballot for the November 1988 election because the party had failed to file the final list of electors, along with their candidacy statements, by August 1, 1988. The Secretary of State accepted the Libertarian Party as a newly recognized party for offices other than president and vice-president. According to this ruling, the Missouri ballot for the November 1988 election will include Libertarian candidates for governor, lieutenant governor, treasurer, secretary of state, United States senator and United States representative--but will not list Libertarian presidential and vice-presidential candidates.
 
 
 3
 After learning that the Secretary of State refused to include the Libertarian presidential and vice-presidential candidates on the November ballot, the Libertarians sought to have certain provisions of the Missouri election laws[4] declared unconstitutional on equal protection grounds[5] and to permanently enjoin the Secretary of State from printing the ballot without the names of the Libertarian presidential and vice-presidential candidates listed on it. On September 16, 1988, the district court denied the Libertarian Party's request for relief, refusing to enjoin the state from printing the 1988 general election ballot without the Libertarian presidential and vice-presidential candidates.
 
 
 4
 The district court applied the method of analysis set forth by the United States Supreme Court in Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). In Anderson, the Court held that, when faced with a restriction on voters' rights to vote for candidates of their choice or candidates' right to run for office, a court must first consider the character and magnitude of the asserted injury, then identify and evaluate the state's interest asserted as justification for the burden imposed by the rule. Anderson, 460 U.S. at 789, 103 S.Ct. at 1570. The district court found that the Libertarians clearly established the character and magnitude of the rights they allege have been violated. The court determined that the state's interest in assuring the integrity of the election ballot justified the burden imposed on new parties. Finally, the court found that requiring new parties to file a final list of electors and their candidacy statements with the recognition petition is a reasonable means of advancing the state's interest.
 
 
 5
 The Libertarian Party appealed to this court. We agreed to review the matter immediately in light of Missouri's requirement that absentee ballots be available by September 27, 1988.[6]
 
 III. DISCUSSION
 A. Statutory Construction
 
 6
 The Libertarian Party's argument on appeal focuses on the language of the Missouri statute that requires a new party to include the names of candidates for presidential electors with the party's recognition petition "if presidential electors are to be nominated by petition." Mo.Rev.Stat. Sec. 115.315 (emphasis added). The Libertarians argue that the statute does not, on its face, require new parties to submit information about their presidential electors at the time they submit their recognition petition. Their argument implies that new parties, at their own option, may choose to nominate electors through the recognition petition, or may choose to nominate electors by some other method not subject to the recognition petition deadline.
 
 
 7
 We find that Missouri law clearly requires new parties to include a list of presidential electors and their candidacy statements at the time of filing a new party recognition petition.[7] Section 115.327, entitled "Declaration of candidacy, when required, form of " states:
 
 
 8
 When submitted for filing, each petition for the * * * formation of a new political party shall include a declaration of candidacy for each candidate to be nominated by the petition. Each declaration of candidacy for the office of presidential elector shall be in the form provided in section 115.399.
 
 
 9
 Mo.Rev.Stat. Sec. 115.327. As the district court found, Sec. 115.327 requires new parties to include presidential elector information as part of their recognition petition.
 
 
 10
 The Libertarians bolster their assertion that elector candidacy statements need not be submitted at the same time as recognition petitions with language from our ruling in Libertarian Party v. Bond, 764 F.2d 538 (8th Cir.1985). In Libertarian Party v. Bond, we stated, in reference to Sec. 115.317, that "[o]nce a new party meets the signature requirement, it need do nothing more in order to get its candidates on the ballot." 764 F.2d at 542. Taken in proper context, however, this quotation was comparing the requirements of Sec. 115.317 with the overly stringent recognition schemes found unconstitutional in other states. See Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (ballot access scheme declared unconstitutional where, even after meeting the signature requirement, the new party was required to engage in elaborate primary election machinery to get its candidates on the ballot). Furthermore, in light of the statutory requirement that new parties include presidential elector information with their recognition petitions, a new party must include such information on the petition in order to meet the signature requirement of Sec. 115.317.
 
 B. Equal Protection
 
 11
 Having found that Missouri law required the Libertarian Party to attach the names and candidacy statements of presidential electors to its recognition petition, we now turn to a discussion of the requirement's constitutionality. The Libertarian Party bases its equal protection argument on the fact that Missouri law requires new parties to submit their presidential electors before established parties.[8] We agree with the district court that the challenged provisions of Missouri's ballot access statute do not deny appellants' right to equal protection.
 
 1. Standard of Review
 
 12
 In Libertarian Party v. Bond, 764 F.2d 538 (8th Cir.1985), a panel of this court recognized that ballot access restrictions endanger vital individual rights, including "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." Anderson v. Celebrezze, 460 U.S. at 787, 103 S.Ct. at 1569 (quoted in Libertarian Party v. Bond, 764 F.2d 538, 540 (8th Cir.1985)). Mindful of the danger posed to these rights by ballot access restrictions, the panel concluded that such provisions must be subjected to strict scrutiny. Libertarian Party v. Bond, 764 F.2d at 540. We agree, and shall therefore apply that standard of review in this case.[9]
 
 
 13
 The application of strict scrutiny for purposes of equal protection challenges to ballot access restrictions involves a two-part analysis: the restriction must be necessary to serve a compelling state interest, and may not go beyond what the state's interest actually requires.[10] MacBride v. Exon, 558 F.2d 443, 448 (8th Cir.1977); McLain v. Meier, 637 F.2d 1159, 1163 (8th Cir.1980). This court clarified its view of "strict scrutiny" as applied to ballot access challenges in Libertarian Party v. Bond,[11] stating:[A] court must determine whether the challenged laws "freeze" the status quo by effectively barring all candidates other than those of the major parties, Jenness v. Fortson, 403 U.S. at 439, 91 S.Ct. at 1974, and provide a realistic means of ballot access. American Party of Texas v. White, 415 U.S. at 783, 94 S.Ct. at 1307. The focal point of this inquiry is whether a "reasonably diligent [ ] candidate [can] be expected to satisfy the signature requirements." Storer v. Brown, 415 U.S. at 742, 94 S.Ct. at 1285. Thus, the test is whether the legislative requirement is a rational way to meet this compelling state interest. The least drastic means test becomes one of reasonableness, i.e., whether the statute unreasonably encroaches on ballot access. See Anderson v. Celebrezze, 460 U.S. at 788 & n. 9, 103 S.Ct. at 1570 & n. 9 (1983) * * *.
 
 
 14
 764 F.2d at 541 (quoting Libertarian Party v. Florida, 710 F.2d 790, 793 (11th Cir.1983), cert. denied, 469 U.S. 831, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984)).
 
 2. Analysis
 
 15
 a. State Interest
 
 
 16
 Clearly, the state's interests which are furthered by its election laws are compelling. It is a fundamental obligation of the states, imposed by Article II, Section 1, Clause 2 of the Constitution of the United States, to provide presidential electors:
 
 
 17
 Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.
 
 
 18
 Although Presidential electors do not appear on Missouri ballots, the significance of their role is unquestionable. Missouri law provides: "The names of candidates for presidential electors shall not be printed on the ballot but shall be filed with the Secretary of State in the manner provided in Sec. 115.399." Mo.Rev.Stat. Sec. 115.243.1. Any vote cast for candidates for President and Vice-President "shall be a vote for their electors." Mo.Rev.Stat. Sec. 115.243.2. Further, when presidential and vice-presidential candidates are to be elected, the official ballot for the general election must include instructions stating "a vote for candidates for President and Vice-President is a vote for their electors." Mo.Rev.Stat. Sec. 115.243.3.
 
 
 19
 The integrity of Missouri's general election ballot is protected by the requirement that Presidential electors file with the Secretary of State a declaration of candidacy. Without such a declaration, there is no assurance that there are capable persons willing to serve as electors and carry out the wishes of Missouri voters in the national electoral college. Thus, because of Missouri's requirements that presidential electors file declarations of candidacy, when the Secretary of State certifies a candidate's name to appear on the Presidential ballot, he is assuring the voters that the candidate is qualified to serve and that their vote for that candidate is meaningful.
 
 
 20
 The state's interest in requiring new parties to file candidacy statements for their presidential electors when they file their recognition petition is similar. With an established party, the Secretary of State has assurance that there will be Presidential electors for their candidate, and there is no risk in printing the names on the ballot. For new political parties, however, declarations of candidacy for their presidential electors insure a vote cast for the new party will be a meaningful vote.
 
 
 21
 b. Burden
 
 
 22
 In examining the validity of the filing requirement, the district court looked at whether the date established by the legislature was reasonable. We agree with the district court that the time frame of the Missouri statutes is reasonable. The filing requirements are not burdensome or even impractical; they certainly are not an "insurmountable obstacle" for a party seeking a spot on the ballot. See American Party, 415 U.S. at 783-84, 94 S.Ct. at 1307-08 (ability of other minority parties to meet ballot access requirements demonstrates lack of burdensomeness). In fact, a "new party"--the New Alliance Party--met the filing requirements for the November election.
 
 
 23
 The overwhelming conclusion in this case is that the Libertarian Party's failure to file its declarations of candidacy is not sufficient to support a claim that the requirement unconstitutionally burdens new parties, nor to suggest that the requirement does not fulfill a compelling state interest. The present case can be equated to the situation presented in Unity Party v. Wallace, 707 F.2d 59 (2d Cir.1983).
 
 
 24
 In Unity Party, the state refused to put a senatorial candidate's name on the ballot because his acceptance, which was mailed on time, was received after the deadline. The court, while acknowledging the apparent severity of the sanction, focused on the simplicity of compliance. "Nothing before us indicates that compliance with the acknowledged acceptance requirement is difficult. There is no evidence in the record that compliance is time-consuming, complex or imposes any financial hardship." Unity Party, 707 F.2d at 62. Only the "careless or inadvertent failure to follow the mandate of the statute" gives rise to the complaint. Id. Here, as in Unity Party, compliance would have been easy.
 
 
 25
 The Unity Party court recognized that while nominees from established parties ordinarily were designated and held out to the public at the party's state conventions, the same could not be said for new party and independent candidates. Id., 707 F.2d at 63-64. "Absent an acknowledged acceptance requirement, the States' ballots would be unnecessarily crowded and confused * * *." Id. The court recognized New York's interest in preventing fraudulent candidacies. Similarly, Missouri's ballot access statutes operate to preserve the integrity of the election process.
 
 IV. CONCLUSION
 
 26
 Missouri's ballot access statute prevents the unnecessary crowding and confusion of its general election ballot. The statute does not impose any unreasonable burdens on new parties. The Libertarians have failed to get their Presidential candidate on the Missouri ballot. App.Br. at 7. Such failure, however, does not render Missouri's election statutes constitutionally invalid.
 
 
 27
 Accordingly, the Libertarians' motion is denied.
 
 APPENDIX
 
 28
 States requiring new parties/independent candidates to submit petitions including presidential elector information before established parties have to submit presidential elector information:
 
 
 29
 New Parties Established Parties
Colorado a August 2 September 23
Massachusetts b August 30 September 13
New Hampshire c August 10 October 25
New Jersey d August 1 August 25
Pennsylvania e August 1 September 16
Rhode Island f August 31 October 14
West Virginia g August 1 September 15
a Colo.Rev.Stat. Secs. 14801, 302304, 701.
b Mass.Gen.L. Sec. 8538; see Serrette v. Connolly, No. 68172 (Suffolk
 County Su perior Court, June 19, 1985) (declaring old petition date
 unconstitutional and requiring new parties to file petitions by last Tuesday
 in August).
c N.H.Rev.State.Ann. Secs. 4653:8, 655:4045, 667:21.
d N.J.Rev.Stat. Sec. 19:1315 (established parties must nominate electors at
 conve ntion and file certificates of nomination with the Secretary of State
 within on e week of nomination); LaRouche v. Burgio, 594 F.Supp. 614
 (D.N.J.1984); April 18, 1988 Secretary of State ruling (deadline for new
 parties should be August 1).
e Pa.Stat.Ann. Sec. 252878 (established parties must file presidential
 elector in formation within thirty days of national convention); Libertarian
 Party of Pennsylvania v. Davis, No. 840262 (M.D.Pa.1984) (new parties must
 file nomination papers on or before August 1).
f R.I.Gen.Laws Sec. 171213; McCarthy v. Noel, 420 F.Supp. 799 (D.R.I.1976)
 (mid-July deadline for new parties unconstitutional); July 1988 Secretary of
 State ruling (petitions for third party and independent candidates accepted
 until August 31).
g W.Va.Code Sec. 3521, 2124.
 
 
 30
 HEANEY, Circuit Judge, dissenting.
 
 
 31
 I respectfully dissent. The majority rightfully holds that the appropriate standard of review is one of strict scrutiny. In Anderson v. Celebrezze, 460 U.S. 780, 793-94, 103 S.Ct. 1564, 1572-73, 75 L.Ed.2d 547 (1983), the Supreme Court Stated:
 
 
 32
 [I]t is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. * * *
 
 
 33
 A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and--of particular importance--against those voters whose political preferences lie outside the existing political parties. By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas. Historically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream. In short, the primary values protected by the First Amendment--"a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," are served when election campaigns are not monopolized by existing political parties.
 
 
 34
 Id., 460 U.S. at 793-94, 103 S.Ct. at 1572-73 (footnotes and citations omitted, emphasis added).
 
 
 35
 Thus, the state comes to us with the very heavy burden of justifying the early filing requirement for presidential electors of "new" political parties. It has not met this burden.
 
 
 36
 The rationale advanced by the state for having an earlier filing date for "new" parties is that it is necessary to assure that there are capable and qualified persons to serve as electors for the "new" political party before the party's presidential candidate is placed on the ballot. The state also argues that its interest in efficiency is better served by requiring a "new" party to file its list of presidential electors before the state undertakes the task of verifying petition signatures. Neither rationale meets the strict scrutiny requirements of Anderson v. Celebrezze.
 
 
 37
 On August 1, 1988, the Libertarian Party filed 41,499 petition signatures, more than two times the showing of support required by statute. In view of the substantial showing of support required by the state and the actual support demonstrated by appellants, it is difficult to credit the concern that a "new" political party will not be able to find a sufficient number of qualified presidential electors.
 
 
 38
 In addition, even if one were to credit the state's concerns, it has not shown that those concerns cannot be met by a deadline later than August 1. The state represents that it need not begin distribution of absentee ballots until September 27, 1988. Even allowing the state a reasonable time to verify the qualifications of proposed electors for new parties prior to distribution of absentee ballots, it would appear that the September 7, 1988 filing of the appellant afforded the state sufficient time to protect its interest.
 
 
 39
 It is undeniable that the earlier filing deadline places obstacles in the path of the Libertarian Party which do not exist for either the Republican or Democratic Party. In light of the minimal interests served by the obstacle, they must fall.
 
 
 
 [1]
 The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri
 
 
 [2]
 Missouri law provides that a group seeking recognition as a new political party must prove its support by filing a recognition petition with the Secretary of State. Mo.Rev.Stat. Secs. 115.315, .317 states:
 
 
 [115]
 315. New political party, how formed.--
 
 
 [1]
 Any group of persons desiring to form a new political party throughout the state, or for any congressional district, state senate district, state representative district or circuit judge district, shall file a petition with the secretary of state. Any group of persons desiring to form a new party for any county shall file a petition with the election authority of the county
 
 
 [2]
 Each page or a sheet attached to each page of each petition for the formation of a new political party shall:
 (1) Declare concisely the intention to form a new political party in the state, district or county;
 (2) State in not more than five words the name of the proposed party.
 If presidential electors are to be nominated by petition, at least one qualified resident of each congressional district shall be named as a nominee for presidential elector. The number of candidates to be nominated shall equal the number of electors to which the state is entitled, and the name of their candidate for president and the name of their candidate for vice president shall be printed on each page or a sheet attached to each page of the petition. The names of the candidates for president and vice president may be added to the party name, but the names of the candidates for president and vice president shall not be printed on the official ballot without the written consent of such persons. Their written consent shall accompany and be deemed part of the petition;
 (3) Give a complete list of the names and addresses, including the street and number, of all candidates to be nominated for office;
 (4) State the office for which each candidate is to be nominated.
 
 
 [3]
 When submitted for filing, each petition shall contain the names and addresses of two people, not candidates, to serve as provisional chairman and treasurer for the party in the event the party becomes a new political party
 
 
 [4]
 If the new party is to be formed for the entire state, the petition shall be signed by the number of registered voters in each of the several congressional districts which is equal to at least one percent of the total number of votes cast in the district for governor in the last gubernatorial elections, or by the number of registered voters in each of one-half of the several congressional districts which is equal to at least two percent of the total number of votes cast in the district for governor at the last gubernatorial election
 
 
 [5]
 If the new party is to be formed for any district or county, the petition shall be signed by the number of registered voters in the district or county which is equal to at least two percent of the total number of voters who voted at the last election for candidates for the office being sought
 
 
 [115]
 317. Filing of valid petition, effect of.--The filing of a valid petition shall constitute the political group a new party for the purpose of placing its name and the names of the candidates which appeared on the petition on the ballot at the new general election or the special election if the petition nominates a candidate to fill a vacancy which is to be filled at a special election. If presidential electors are nominated by the petition, the names of the candidates for elector shall not be placed on the official ballot, but the name of their candidate for president and the name of their candidate for vice president shall be placed on the official ballot at the next presidential election. If, at an election in which the new party's candidates first appear, any of its candidates for a statewide office receives more than two percent of all votes cast for the office, the new party shall become an established political party for the state. If, at the election in which the new party's candidates first appear, any of its candidates for any office receives more than two percent of the votes cast for the office in any district or county, the new party shall become an established political party only for the district or county
 New party petitions must be submitted before 5:00 p.m. on the first Monday in August, here August 1. Mo.Rev.Stat. Sec. 115.329 provides, in pertinent part:
 
 
 [115]
 329. Time for filing of petitions.--1. The secretary of state shall not accept for filing any petition for the formation of a new party or for the nomination of an independent candidate which is submitted prior to 8:00 a.m. on the day immediately following the general election next preceding the general election for which the petition is submitted or which is submitted after 5:00 p.m. on the first Monday in August immediately preceding the general election for which the petition is submitted
 
 
 [3]
 Approximately one week before August 1, 1988, a representative of the Libertarian Party called the Secretary of State's office to inquire about the filing requirements for presidential electors and their candidacy statements. The deputy secretary of state told the caller that presidential electors and their declarations of candidacy had to be filed by 5:00 p.m. on August 1, the same deadline that applied to filing petitions
 
 
 [4]
 Specifically, Mo.Rev.Stat. Secs. 115.315, .317, .327, .329 and .399
 
 
 [5]
 Under Missouri law, established parties must submit a list of presidential electors and their candidacy statements by the third Tuesday before the General Election--by October 18, 1988, for the November election. Mo.Rev.Stat. Sec. 115.399.2
 
 
 [6]
 See Mo.Rev.Stat. Sec. 115.281
 
 
 [7]
 The Libertarians point to sixteen other states that require new parties to file presidential elector information at the time of filing a recognition petition: Colorado, Connecticut, Illinois, Indiana, Iowa, Kentucky, Louisiana, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Virginia and West Virginia. See appellants' brief at 5; Presidential Election Timing Chart, 1988 (submitted by appellants and attached to their brief). Our review of the election laws of these sixteen states reveals that at least seven states require new parties to submit petitions including information about presidential electors before established parties have to submit information about their presidential electors: Colorado, Massachusetts, New Hampshire, New Jersey, Pennsylvania, Rhode Island and West Virginia. See Appendix
 Our research has revealed no cases challenging the presidential elector requirements of an election scheme like Missouri's. We have found no previous instance where a ballot access provision has been found invalid on the grounds that requiring new parties to submit presidential elector information earlier than established parties violated equal protection. The fact that at least seven states besides Missouri require new parties to submit presidential elector information before established parties simply underscores the legitimacy of the states' interest and the reasonableness of the burden this statute imposes on the Libertarians.
 
 
 [8]
 Mo.Rev.Stat. Sec. 115.399.2 provides:
 Not later than the third Tuesday prior to each Presidential election, the state committee of each established political party shall certify in writing to the Secretary of State the names of its nominees for presidential electors.
 Missouri law does not require write-in candidates to submit presidential electors and declarations of their candidacy. See Mo.Rev.Stat. Sec. 115.453(4).
 
 
 [9]
 Over the past twenty years, the United States Supreme Court has decided several cases involving equal protection challenges to ballot access statutes. Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (invalidating Ohio's ballot access requirements); Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) (upholding Georgia's ballot access requirements); Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (remanding case involving California ballot access scheme to determine whether reasonably diligent candidate could be expected to satisfy requirements); American Party v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (holding Texas access requirements); Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) (invalidating Illinois signature requirement); Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (invalidating Ohio signature requirement); Munro v. Socialist Workers Party, 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) (upholding Washington ballot access requirement)
 A close reading of these cases reveals that while the Supreme Court generally purports to subject ballot access requirements to strict scrutiny, the Court has not used that term consistently. See National Prohibition Party v. Colorado, 752 P.2d 80 (Colo.1988) (discussing inconsistency in Supreme Court cases dealing with ballot access restrictions); L. Tribe, American Constitutional Law, Sec. 13-20 (2d ed. 1988) (same); J. Nowak, R. Rotunda & J. Young, Constitutional Law, 781-85 (2d ed. 1983) (same). The traditional definition of strict scrutiny incorporates two elements: the state must demonstrate a compelling interest, and the statute in question must be the least restrictive means of furthering that interest. The Supreme Court applied this traditional form of strict scrutiny in two ballot access restriction cases. See Williams, 393 U.S. at 30-33, 89 S.Ct. at 10-12; Illinois State Board, 440 U.S. at 185-86, 99 S.Ct. at 990-91. In other cases applying strict scrutiny, the Court required that the state interest involved must be compelling, but did not inquire whether a less restrictive alternative would adequately protect the state's interest. See Storer, 415 U.S. at 729, 94 S.Ct. at 1278-79; American Party, 415 U.S. at 780-81, 94 S.Ct. at 1305-06. In one early case, the Court did not explicitly indicate which standard of review it used, but appeared to use only minimal scrutiny. See Jenness, 403 U.S. 431, 91 S.Ct. 1970 (1971). The Court's most recent cases considering equal protection challenges to ballot access requirements seem to broaden traditional strict scrutiny to incorporate a balancing approach. See Anderson, 460 U.S. at 789, 103 S.Ct. at 1570; Munro, 479 U.S. at 200-01, 107 S.Ct. at 540-41 (Marshall, J., dissenting). The Court set forth this balancing approach in Anderson:
 [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.
 460 U.S. at 789, 103 S.Ct. at 1570 (citations omitted).
 While we recognize the apparent inconsistency in the standard of review applied by the Supreme Court, we note that the ballot access requirement at issue here passes constitutional muster under any standard used by the Court--traditional strict scrutiny, the lessened scrutiny of Storer, the minimal scrutiny of Jenness, or the balancing test of Anderson. We leave closer examination of the relationship between the traditional strict scrutiny of Williams and the balancing test of Anderson for another day.
 
 
 [10]
 This second requirement has also been articulated in terms of a "least restrictive means" test. See Libertarian Party, 764 F.2d at 540
 
 
 [11]
 While the discussion in Libertarian Party addressed "strict scrutiny" in relation to "percentage or numerical requirements fixed by the states," 764 F.2d at 541 n. 3, similar reasoning applies to the presidential elector timing requirement at issue here. Like a percentage or numerical requirement, the date established by the Missouri statute is, in a sense, necessarily arbitrary. Once a particular date is established, it is difficult to defend that date as the least restrictive. In this case, for example, any date within a few days of August 1 would serve the state's interests as well as August 1. As pointed out in Libertarian Party, however, the thrust of the Supreme Court's teachings focus on whether the ballot access restrictions taken as a whole provide a reasonable means of furthering the compelling state interest while still providing reasonable ballot access for a new party. Id