# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00076-CV

**Esperanza Andrade, in her official capacity as Secretary of State for the State of Texas, Appellant**

**v.**

**NAACP of Austin, Nelson Linder, Sonia Santana and David Van Os, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-06-002147, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## O P I N I O N

Appellees NAACP of Austin, Nelson Linder, Sonia Santana, and David Van Os sought declaratory and injunctive relief against the Secretary of State for the State of Texas,[1] alleging that the Secretary acted outside her statutory and constitutional authority when she certified the paperless computerized voting machine and system currently used in Travis County.[2] In this interlocutory appeal, the Secretary contends that the trial court erred in denying her plea to the jurisdiction, filed on the grounds of sovereign immunity and standing. Because we conclude the trial

---

[1] We substitute Esperanza Andrade, in her official capacity as Secretary of State for the State of Texas, as the proper party on appeal in place of former Secretary of State, Phil Wilson. *See* Tex. R. App. P. 7.2(a) (automatic substitution of public officer as party in official capacity).

[2] Appellees also brought suit against Dana DeBeauvoir, in her official capacity as the Travis County Clerk, but she was dismissed from the suit. Her dismissal is not at issue in this interlocutory appeal.

court has subject matter jurisdiction over this suit, we affirm the trial court's order denying the plea to the jurisdiction.

## BACKGROUND

Appellees brought suit in June 2006 against the Secretary for "failure to provide voting procedures that ensure their right to a properly counted vote, and a fair and secure election." Asserting violations of the Texas Constitution and the Texas Election Code, appellees challenged the Secretary's certification of the paperless computerized voting machine and system currently used in Travis County, the Hart Intercivic eSlate ("eSlate").[3]  Appellees' primary complaint is that the eSlate does not provide a voter-verified paper audit trail independent of its software.  Appellees seek declaratory relief that the Secretary was "violating, and continuing to violate, Plaintiffs' fundamental voting rights, guaranteed under the Texas Constitution and the Texas Election Code," and injunctive relief to enjoin the Secretary from permitting the use of "paperless election systems, without an independent paper ballot mechanism."

In their petition, appellees' pleaded facts include:

7.      . . . The voting system in question is used in Travis County local elections, and is certified by the Defendant Secretary of State.

* * *

9.      Plaintiffs, except for Mr. Van Os, are voters in Travis County, and have participated, and will continue to participate, in Travis County elections.

_____

[3]  *See* Tex. Const. art. I, § 3, art. VI, §§ 2(c), (4); Tex. Elec. Code Ann. §§ 122.031-.39 (West 2003 & Supp. 2008).

2

Plaintiffs are required to use a paperless computerized voting machine during Travis County elections, certified by Defendant Secretary.

10. Plaintiff Van Os is a candidate for state office, specifically the position of Attorney General. He seeks the votes of people from Travis County, and the outcome of his election may depend on the outcome of voting in Travis County.

11. The election procedure for paperless computerized voting in Travis County requires electors to enter their vote into the computer, using a turn dial system. . . . After the computer has prompted the elector to vote in each individual election, the elector is then offered the opportunity to view a screen showing a summary of all the votes placed. Once approved by the elector, the voting summary disappears from the screen and is believed to be recorded by the computer software.

* * *

13. Voters must rely on the software used to assure their votes are recorded properly. Once an elector enters his or her vote, there is no way to independently determine if the vote cast has been recorded correctly. The voter is forced to hope the software that records the votes is created and maintained, without mistake or fraud, to protect the integrity of the ballot. . . . There is no independent verification mechanism required by the Secretary. . . .

14. The software used to record and tabulate the votes cast has been created by a private entity, Hart Intercivic, and certified for use by the Defendant Secretary. However, the actual procedures of this private company are not governed by Texas law. Thus, the voters and candidates must rely on a private company completely unsupervised by Texas officials to ensure votes are properly counted and the voting system has been properly constructed, maintained, and secured.

15. The Secretary has no way to determine if the software has been properly designed, is functioning properly while in use, or has been protected from tampering, fraudulent or otherwise. All checks on the proper functioning of the software are created, and thus ultimately controlled by Hart Intercivic.

16. The coding created by Hart Intercivic is not open to public scrutiny. Travis County is only provided procedures by Hart Intercivic to conduct checks on the machine's accuracy. . . .

3

* * *

19.    . . . . The paperless computerized voting systems only allow for a re-tabulation of the votes cast and recorded. There is no independent procedure to assure the votes recorded by the software equals the votes intended by the electors.

20.    The lack of proper re-count procedure for computerized voting machines creates a disparity in the re-count methodology. Voters not required to use the paperless computerized voting machines (absentee, military, etc.) are granted the right to a hand re-count of votes. This fails to provide the voters and candidates with an equal way of accurately counting the vote. . . .

* * *

28.    Countless reports of malfunctions and security issues have been reported with paperless computerized voting systems. Problems with Hart Intercivic's E-slate machine, currently used in Travis County, have been reported in Texas and nationwide. Problems with other computer-based paperless machines certified in Texas have been, and are continuing to be reported, nationwide.

* * *

30.    Only with a paper verified system can a proper audit be performed on an election run by computerized voting machines. There can never be a paperless system that does not require sole reliance on the machine itself, and prevent independent verification.

* * *

37.    The paperless computerized voting machine only has the ability to re-tabulate the votes already recorded. There is no independent verification the votes recorded reflect the intention of the voters. Even though the machines have the capability of producing a "ballot image report," this report is insufficient to comply with the verified re-count granted by the Legislature. The report simply prints out its own recording of the votes cast. . . . There is no way to independently verify the accuracy of the machine in reprinting the recorded votes.

* * *

4

39. The computerized voting machine does not provide electors with a paper ballot of their vote. A ballot would provide confidence in the elector that the vote recorded was the ballot he or she intended to cast, and also provide a way for the vote to be independently verified in the case of a re-count. Without providing evidence on paper of the vote cast, there is no way to comply with the Election Code's requirement of "verification of the vote" during a re-count.

* * *

51. No verifiable manual re-count can be conducted using the computerized voting machines in place today. . . .

The Secretary in October 2007 filed a motion for summary judgment pursuant to 166a(c) and (i) of the rules of civil procedure and a plea to the jurisdiction, asserting that the individual appellees and the NAACP of Austin do not have standing to bring their claims and that sovereign immunity barred the suit. Appellees responded, filing evidence including affidavits from Linder, Santana, Van Os, and Dan Wallach, who averred as an expert concerning the eSlate. The Secretary filed a reply with objections to portions of the affidavits of Linder, Van Os, and Wallach, but did not file any controverting evidence. After a hearing, the trial court sustained the Secretary's objections in part, but overruled the Secretary's objections to the content of Wallach's affidavit. The trial court denied the plea to the jurisdiction and the motion for summary judgment. This interlocutory appeal from the denial of the plea to the jurisdiction followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

**ANALYSIS**

In two issues, the Secretary contends that the trial court erred in denying her plea to the jurisdiction because appellees lack standing and their suit is barred by sovereign immunity. The

5

Secretary did not offer controverting evidence and does not dispute appellees' evidence. Her contention is that the trial court does not have subject matter jurisdiction because appellees failed to allege or demonstrate standing to bring their claims or a waiver of sovereign immunity.

***Standard of Review***

We review the trial court's ruling on a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). A plea to the jurisdiction is a dilatory plea that contests the trial court's authority to determine the subject matter of the cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff's claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. *Id*. The purpose of a dilatory plea is not to force a plaintiff to preview his case on the merits but to establish a reason why the merits of the plaintiff's claims should never be reached. *Id*.

When a plea to the jurisdiction challenges the pleadings, we must determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See Miranda*, 133 S.W.3d at 226-27 (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). To make this determination, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Id*. A plaintiff has a right to cure pleadings defects if the plaintiff has not alleged sufficient jurisdictional facts. *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). We also may consider evidence filed by the parties regarding the jurisdictional issue and must do so when necessary to resolve the jurisdictional

issues raised.  *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554.  If the evidence creates a fact issue regarding the jurisdictional issue, the trial court may not grant the plea to the jurisdiction.  *Miranda*, 133 S.W.3d at 227-28.

*The Controversy*

In appellees' suit seeking injunctive and declaratory relief from the Secretary's alleged violation of their rights, the issue is whether the Secretary acted outside her constitutional and statutory authority by certifying the eSlate for use in Travis County.  Appellees contend that the Secretary acted outside her statutory authority when she certified the eSlate because it does not meet election code voting system standards.  *See* Tex. Elec. Code Ann. §§ 122.031-.39 (West 2003 & Supp. 2008).  Appellees further contend that the Secretary acted outside her constitutional authority because certification of the eSlate violated appellees' equal protection rights pursuant to Article I, section 3, of the Texas Constitution.  *See* Tex. Const. art. I, § 3.[4]  Appellees also contend that the Secretary's certification violated their suffrage rights pursuant to article VI, sections 2(c) and

---

[4]  Section 3 of article I of the Texas Constitution reads:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

Tex. Const. art. I, § 3.

7

(4), of the Texas Constitution. *See* Tex. Const. art. VI, §§ 2(c), (4).[5] Construing appellees'
pleadings in favor of jurisdiction and not delving into the merits of their claims, we turn to the
Secretary's issues on appeal. *See Miranda*, 133 S.W.3d at 226-27; *Bland Indep. Sch. Dist.*,
34 S.W.3d at 554.

### *Standing*

In her first issue, the Secretary contends that appellees do not have standing to
challenge the Secretary's certification of the eSlate because they have not "alleged or offered any
proof that the voting machines used in Travis County have ever damaged their votes or anyone else's
votes." She contends that the law requires that appellees "plead concrete, particularized injuries
personal to them from their use of the complained of voting machines," and that they allege "only
speculative injury to their votes (or campaign)." The Secretary also contends that appellees' status
as voters or participants in the political process does not provide standing because standing requires

---

[5] Sections 2(c) and 4 of article VI read:

Sec. 2(c): The privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influences in elections from power, bribery, tumult, or other improper practice.

* * *

Sec. 4: In all elections by the people, the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box; and the Legislature shall provide by law for the registration of all voters.

Tex. Const. art. VI, §§ 2(c), (4).

an injury distinct from that sustained by the public at large. As to appellees' equal protection claim, the Secretary further contends that appellees failed to demonstrate that they were singled out and treated differently from others similarly situated. The Secretary also challenges the associational standing of Linder and the NAACP to bring suit on behalf of NAACP members.

Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. The general test for common law standing in Texas requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Id*. (quoting *Board of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)). Suits for equitable relief may be maintained against governmental entities for constitutional violations. *See City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Section 273.081 of the election code further provides that a person "who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." Tex. Elec. Code Ann. § 273.081 (West 2003).

For cases within a court's jurisdiction, courts may determine the statutory and constitutional rights of parties pursuant to the Uniform Declaratory Judgment Act when a controversy has arisen but before any wrong has been committed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008) ("A person . . . whose rights . . . are affected by a statute . . . may have

9

determined any question of construction or validity arising under . . . the statute."); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 626 (Tex. 1996) (in facial constitutional challenge to statute, plaintiff must have suffered "some actual or threatened injury" under the statute and must contend "the statute unconstitutionally restricts the plaintiff's own rights"); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (UDJA "procedural device for deciding cases already within a court's jurisdiction"); *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 88 (Tex. App.—Austin 2004, pet. denied) (UDJA provides means for court to make determination "before any wrong has actually been committed," that is "preventative in nature"); *Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 296-97 (Tex. App.—Austin 2004, no pet.) (UDJA may be used to "clarify constitutional imperatives").

Appellees allege that the Secretary acted outside her authority in certifying the eSlate under the election code and the Texas Constitution and that they have been harmed by the Secretary's actions. *See* Tex. Const. art. I, § 3, art. VI, §§ 2(c), (4); Tex. Elec. Code Ann. §§ 122.031-.39, 273.081; Tex. Civ. Prac. & Rem. Code Ann. § 37.004. We turn to a review of appellees' pleaded facts, accepting the pleadings as true and construing them liberally in favor of jurisdiction, as we are required to do. *See Miranda*, 133 S.W.3d at 226-27.

Appellees alleged that they are registered voters in Travis County, represent registered voters, or are participants in the political process in Travis County[6] without an alternative but to use

---

[6] Appellees alleged in their pleadings:

1.      Plaintiff NAACP of Austin is a membership organization in Travis County that represents, and advocates on behalf of, the civil rights of African Americans and other persons of color, particularly the voting rights of such

10

the eSlate to cast their votes in elections in Travis County; the eSlate is not capable of providing records for an audit or a verifiable recount, has problems with malfunctions and security issues, and only has the ability to re-tabulate votes already recorded; problems with the eSlate "have been reported in Texas and nationwide"; the Secretary has "no way to determine" if the eSlate software has been "protected from tampering, fraudulent or otherwise"; and other voters in Texas utilize voting systems that provide a record for an audit and a verifiable recount. We conclude appellees have pleaded sufficient facts to demonstrate their standing to pursue their claims for declaratory and injunctive relief against the Secretary. *See id.*

Apart from appellees' pleadings, we need not "weigh the claims' merits" to conclude that appellees' uncontroverted evidence filed in response to the Secretary's plea and motion for summary judgment only bolsters appellees' assertion of standing. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.[7] In his affidavit,

> persons. Its president is Nelson Linder, who also brings this suit in his personal capacity. The great majority of members of the NAACP of Austin are residents of, and voters in, Travis County. Plaintiff NAACP of Austin brings this suit in its representational capacity.
>
> 2. Plaintiff Sonia Santana is a citizen of Travis County, resides there, and is a voter in Travis County. She is also a political supporter of Plaintiff David Van Os.
>
> 3. The foregoing Plaintiffs[ ] are participants in the Travis County local elections. They are required to use paperless computerized voting systems to cast their votes in Travis County elections.
>
> 4. Plaintiff David Van Os is a candidate for statewide office and will appear on the November ballot in Travis County.

[7] In *Miranda*, the Department attached evidence in support of its plea and challenged "conclusory allegations" found in the plaintiffs' petition. *See Texas Dep't of Parks & Wildlife v.*

Dan Wallach averred as an expert concerning the eSlate. He averred to the results of studies conducted on the eSlate and his opinions from the studies, including that the eSlate software is subject to compromise and has "significant security flaws," that the eSlate only is capable of re-tabulating the votes recorded, that it cannot provide a meaningful audit, and voters in other Texas counties are allowed independent verification of their vote. He also averred to actual malfunctions that had occurred in Texas elections.

Relying on *DaimlerChrysler Corporation v. Inman,* 252 S.W.3d 299, 304-05 (Tex. 2008), the Secretary contends that appellees do not have standing because they have not alleged an actual injury, but only a speculative or hypothetical injury concerning the eSlate being used in Travis County. In *DaimlerChrysler,* three plaintiffs sued on their own and for a nationwide class of some ten million owners and lessees of DaimlerChrysler vehicles for economic damages for faulty seatbelts. *Id*. at 300. The plaintiffs did not allege that the seatbelts had caused injury and were unaware of "anyone who was ever harmed" by the seatbelts. *Id*. at 301. The supreme court concluded that "the plaintiffs' fear of possible injury from an accidental release of a seatbelt is so remote that they lack standing to assert their claims." *Id*. In that context, the supreme court stated that, for a plaintiff to have standing, "a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, and not hypothetical." *See id*. at 304-05. In contrast, appellees seek declaratory and injunctive relief concerning the exercise of their fundamental

*Miranda*, 133 S.W.3d 217, 222 (Tex. 2004). The Department contended that gross negligence was a jurisdictional prerequisite to the plaintiffs' claims and that its evidence affirmatively negated gross negligence. *Id*. In that context, the court considered the evidence submitted by the parties. *Id*. at 227-28.

12

right to vote based on the Secretary's certification of the eSlate for use in elections in Travis County. *See* Tex. Elec. Code Ann. § 273.081; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Bexar Metro. Water Dist.*, 156 S.W.3d at 88; *Democracy Coalition*, 141 S.W.3d at 296-97.[8]

We are not persuaded by the Secretary's argument that appellees have not alleged an injury distinct from the public at large. *See Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (to have standing, plaintiff must allege "some injury distinct from that sustained by the public at large"). In *Brown*, the plaintiffs, a citizen and a city council member, challenged a mayor's authority to issue an executive order. *Id*. at 299. The plaintiffs asserted their claim based on their status as persons who had voted against an ordinance that was "overridden and virtually held for naught" by the later executive order. *Id*. at 304. The supreme court, in determining that the plaintiffs did not have standing to challenge the executive order, noted that the plaintiffs' votes against the ordinance were "given full effect" to defeat the proposed ordinance, which did not go into effect. *Id*. In contrast,

---

[8] Courts have zealously protected the right to vote. *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." ); *Stewart v. Blackwell*, 444 F.3d 843, 862 (6th Cir. 2006) ("Few rights have been so extensively and vigorously protected as the right to vote. Its fundamental nature and the vigilance of its defense, both from the courts, Congress, and through the constitutional amendment process, stem from the recognition that our democratic structure and the preservation of our rights depends to a great extent on the franchise."); *see also United States v. Mosley*, 238 U.S. 383, 386 (1915) ("We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box."); *Avery v. Midland County*, 406 S.W.2d 422, 425 (Tex. 1966) ("Petitioner as a voter in the county has a justiciable interest in matters affecting the equality of his voting and political rights."); Thomas Paine, *Dissertation on the Principles of Government*, 1795 ("The right of voting . . . is the primary right by which all other rights are protected.").

appellees' allegations concern the process in which they exercise as registered voters their right to vote in Travis County. *See id.* at 303-04; *White v. Robinson*, 260 S.W.3d 463, 471 (Tex. App.—Houston [14th Dist.] 2008, pet. filed) (distinction drawn for purposes of standing between challenge to election result and election process); *see also Wexler v. Anderson*, 452 F.3d 1226, 1230 (11th Cir. 2006) (court addressed merits of challenge to touchscreen voting system brought by registered voter with others); *Weber v. Shelley*, 347 F.3d 1101, 1105-07 (9th Cir. 2003) (court addressed merits of challenge brought by resident and registered voter of county to the lack of voter-verified paper-trail in touchscreen voting system); *Blum v. Lanier*, 997 S.W.2d 259, 262, 264 (Tex. 1999) (qualified voter who signed an initiative petition had standing to challenge the form in which referendum put to citizens).

We are equally unpersuaded by the Secretary's argument that appellees do not have standing to assert an equal protection claim because they have not shown that they are being treated differently from other voters similarly situated. *See Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 647 (Tex. 2004) ("To bring an individual equal-protection claim, [plaintiffs] must demonstrate that they were intentionally singled out and treated differently from others similarly situated."). Taking appellees' pleadings as true, appellees have no choice but to use the eSlate for elections in Travis County, compared with other voters in the state of Texas. *See Dunn v. Blumstein,* 405 U.S. 330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.").

As to the associational standing of the NAACP of Austin and Linder to bring claims on behalf of NAACP members, the Secretary challenges only the first prong of the test for

associational standing.  *See Texas Ass'n of Bus.*, 852 S.W.2d at 447.  Under the test for associational standing, "an association has standing to sue on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Id*. (quoting *Hunt v. Washington State Apple Comm'n*, 432 U.S. 333, 343 (1977)).  Linder has brought suit in his own capacity as a voter and participant in Travis County elections and has standing to assert his claims.  Because we conclude that NAACP members as registered voters and participants in Travis County elections would have standing to sue in their own right, we conclude that the NAACP of Austin has associational standing to seek declaratory and injunctive relief against the Secretary on behalf of its members.

We conclude that appellees have affirmatively demonstrated that they have standing to assert their claims for declaratory and injunction relief concerning the Secretary's certification of the eSlate.  *See* Tex. Elec. Code Ann. § 273.081; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Democracy Coalition*, 141 S.W.3d at 296-97.  We overrule the Secretary's first issue.

***Sovereign Immunity***

In her second issue, the Secretary argues that even if the NAACP of Austin and the individual appellees have standing, their suit is barred by sovereign immunity because the Secretary's decision to approve the eSlate was discretionary, appellees have not alleged an *ultra vires* act, and there is no statutory authority to review the Secretary's administrative decision to certify the eSlate.  The Secretary contends that appellees failed to demonstrate a waiver of sovereign immunity because they failed to allege or show that the Secretary did not follow the procedures for certification

15

as outlined in the election code. The Secretary also contends that appellees have failed to plead a basis of jurisdiction with respect to the statutory recount provisions, contending that there is no requirement in the election code that voting systems must have a voter-verified paper ballot, an optical scan, or other safeguard desired by appellees.

Sovereign immunity is properly asserted in a plea to the jurisdiction, *see Miranda*, 133 S.W.3d at 225-26, and, absent an express waiver of sovereign immunity, the State is generally immune from suit. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). But sovereign immunity does not shield a governmental entity from a suit for declaratory and equitable relief for a constitutional violation. *See City of Elsa*, 226 S.W.3d at 392; *City of Beaumont*, 896 S.W.2d at149. We conclude that appellees' claims seeking declaratory and injunctive relief for alleged constitutional violations are not barred by sovereign immunity. We turn then to appellees' claims based on election code violations.

A justiciable controversy regarding whether a state agency or officer has acted beyond his statutory authority also does not implicate sovereign immunity. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997) (action to determine or protect private parties' rights against "a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars") (citing *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945)); *see also IT-Davy*, 74 S.W.3d at 855. Further, section 273.081 of the election code provides that a person "who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." Tex. Elec. Code Ann. § 273.081; *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) ("As

16

is evident, the Legislature has specifically called upon the courts [under section 273.081] to exercise their equitable powers to resolve election code violations."); *Triantaphyllis v. Gamble*, 93 S.W.3d 398, 401, 408 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (injunctive relief under section 273.081 concerning alleged election code violations upheld). The issue then is whether appellees have affirmatively demonstrated a justiciable controversy that the Secretary acted outside her statutory authority under the election code. *See Miranda*, 133 S.W.3d at 227-28; *Federal Sign*, 951 S.W.2d at 404.[9]

We begin by reviewing the Secretary's authority under the election code to approve or deny applications for voting systems and equipment. Subchapter B of chapter 122 sets forth the procedures that the Secretary must follow in determining whether to approve or disapprove an application for a voting system. *See* Tex. Elec. Code Ann. §§ 122.031-.039; *see id*. § 122.031(a) (West 2003) (voting system may not be used in election in Texas unless approved by secretary of state). Section 122.036 provides for the appointment of examiners to examine voting systems and to submit written reports to the Secretary. *See id.* § 122.036 (West 2003). After the examiners' report is delivered to the Secretary, the Secretary conducts a public hearing. *See id*. § 122.0371 (West Supp. 2008). The Secretary then reviews the examiners' reports, considers the views expressed at the public hearing, and determines if the voting system satisfies the applicable requirements in the election code:

---

[9] Even if we concluded that appellees' pleadings are inadequate, we would remand to allow appellees the opportunity to amend to cure the pleading defect. *See Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

(a) After reviewing the examiners' reports and considering the views expressed at the public hearing, the secretary of state shall determine whether the voting system or voting system equipment for which an application has been submitted satisfies the applicable requirements for approval.

(b) The secretary may examine the system or equipment to aid in determining whether it satisfies the requirements for approval.

(c) If the system or equipment satisfies the applicable requirements for approval, the secretary by written order shall approve the system or equipment of that design for use in elections. Otherwise, the secretary shall deny the application.

*See id.* § 122.038 (West Supp. 2008). Pursuant to subsection (c) of section 122.038, the Secretary does not have discretion in her determination whether to deny or approve an application for a voting system. *See id*. § 122.038(c). She is only authorized to approve or disapprove a voting system based on the system's compliance with voting system standards. *See id*. § 122.032(a) (West 2003) ("For a voting system or voting system equipment to be approved for use in elections, the voting system in which the equipment is designed to be used must comply with the standards proscribed by Subchapter A."); *see also* Tex. Gov't Code Ann. § 311.016(2) (West 2005) ("'Shall' imposes a duty.").

Subchapter A of chapter 122 of the election code sets forth the voting system standards. *See* Tex. Elec. Code Ann. §§ 122.001-.005 (West 2003 & Supp. 2008). "A voting system may not be used in an election unless the system" meets certain standards, including that the system "is capable of providing records from which the operation of the voting system may be audited." *See id*. § 122.001(a) (11). The election code also provides for recounts. *See id*. §§ 211.001-216.005 (West 2003 & Supp. 2008); *id*. § 211.001 (West 2003) ("A recount may be obtained as provided by

18

this title in any election."). A recount is defined as "the process conducted under this title for verifying the vote count in an election." *Id*. § 211.002(1) (West 2003).

Appellees' pleaded facts include that the eSlate is not capable of providing records for an audit or a verifiable recount. These allegations are sufficient to support appellees' claim that the Secretary acted outside her statutory authority because the Secretary is only authorized to approve a voting system "capable of providing records from which the operation of the voting system may be audited" and that has the capability to provide a recount—"the process conducted under this title for verifying the vote count in an election." *See id*. §§ 122.001(a)(11), 122.038(c), 211.002(1). Wallach averred, as an expert on the eSlate, that the eSlate is not capable of providing an independent verification of votes and that it cannot provide a meaningful audit.[10] Appellees' evidence filed in response to the Secretary's plea and motion for summary judgment further demonstrates that sovereign immunity does not bar appellees' election code claims. *See Bland Indep. Sch. Dist*., 34 S.W.3d at 554.

The Secretary contends that appellees have failed to plead a claim with respect to the statutory recount provisions because the election code does not require the particular systems that appellees advocate. Whether or not appellees' pleadings include allegations that the Secretary should approve particular systems in place of the eSlate, appellees pleaded and seek declaratory and injunctive relief to enjoin the Secretary from approving the eSlate for use in Travis County. We

---

[10] We note that appellees' pleaded facts and Wallach's affidavit also support claims that the eSlate does not comply with the voting system standards that voting systems must operate "safely" and "accurately" and be "safe from fraudulent or unauthorized manipulation." *See* Tex. Elec. Code Ann. § 122.001(a)(3), (4) (West Supp. 2008).

conclude that appellees have affirmatively demonstrated the trial court's jurisdiction to determine whether the Secretary acted outside her statutory authority when she certified the eSlate. *See* Tex. Elec. Code Ann. § 122.038(c); *Miranda*, 133 S.W.3d at 226-27; *Federal Sign*, 951 S.W.2d at 404. We overrule the Secretary's second issue.

## CONCLUSION

Having concluded that appellees have standing and that sovereign immunity does not bar their claims, we conclude the trial court has subject matter jurisdiction over this suit, and we affirm the trial court's order denying the plea to the jurisdiction.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson:
    Dissenting Opinion by Justice Waldrop

Affirmed

Filed:   April 10, 2009